No. 11-2103

# UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

**CHAD CUNNINGHAM,**

     **Plaintiff-Appellant,**

**vs.**

**UNIVERSITY OF NEW MEXICO
BOARD OF REGENTS and
NATIONAL BOARD OF MEDICAL
EXAMINERS;**

     **Defendants-Appellees.**

**District of New Mexico
No. CIV 10-0451 BB/RLP**


## DIRECT APPEAL FROM A
## JUDGMENT OF THE UNITED STATES DISTRICT COURT


## APPELLANT'S OPENING BRIEF
## (<u>Oral Argument is Requested</u>)


**Presented to the Court December 28, 2011**

**SANTIAGO E. JUÁREZ**
Attorney for Appellant, Chad Cunningham
1822 Lomas Boulevard, NW
Albuquerque, NM 87104

(505) 246-8499
(505) 246-8599 (Facsimile)

## UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

**CHAD CUNNINGHAM,**
      **Plaintiff-Appellant,**

                                **No. USCA 11-2103**
                                **District Court No.**
**vs.**                          **No. CIV 10-0451 BB/RLP**

**UNM BOARD OF REGENTS, Et. Al.**      **CERTIFICATE**
      **Defendant/Appellant.**                  **OF**
                                    **INTERESTED PARTIES**

      Pursuant to Tenth Circuit Court of Appeals Local Rule 28.2.1, the undersigned counsel of record certifies that the following listed persons have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

All such parties are revealed in the caption.


                    Respectfully Submitted,

                    /s/ Santiago E. Juárez
                    Santiago E. Juárez
                    Attorney of Record for Appellant

## TABLE OF CONTENTS

SUBJECT MATTER AND APPELLATE JURISDICTION ..............................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW AND HOW THEY WERE PRESENTED AND RULED UPON IN THE PROCEEDINGS BELOW.................................................................................................1

STATEMENT OF THE CASE...................................................................2

SUMMARY OF ARGUMENT ..................................................................5

ARGUMENT ..........................................................................................5

THE LEGAL STANDARDS......................................................................5

1. Fed.R.Civ.P. 12(b)(1) and 12(b)(6) ..................................................5

2. The Americans With Disabilities Act (ADA) and the Americans With Disabilities Act Amendments Act of 2008 (ADAAA)(42 U.S.C. §12101) ...........6

DISCUSSION ........................................................................................12

As to Defendant/Appellee National Board of Medical Examiners...................13

Defendant/Appellee University of New Mexico ..........................................23

CONCLUSION......................................................................................33

STATEMENT OF REQUESTED RELIEF .................................................34

REQUEST FOR ORAL ARGUMENT.......................................................34

CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF APPELLATE PROCEDURE 32(A)(7)(B) AND (C) ..........................................35

ATTORNEY'S CERTIFICATE OF MAILING AND ELECTRONIC FILING...................................................................................................36

## <u>TABLE OF AUTHORITIES</u>

**CASES**

Bell Atlantic Corp. v. Twombly, 504 U.S. 544 (2007) ...................................... 6, 29

Briscoe v. Fred's Dollar Store, 24 F.3d 1026 (8th Cir. 1994).................................19

Burton v. Wilmington Park Parking Authority, 365 U.S. 715 (1961)....................20

Chavez v. Manville Products Corp., 108 N.M. 643, 777 P.2d 371 (1989) .............31

Edelman v. Jordan, 415 U.S. 651 (1974)........................................................ 24, 29

Erickson v. Pardus, 551 U.S. 89  (2007).............................................................. 6, 30

Ex parte Young, 209 U.S. 123 (1908) .....................................................................24

Fitzpatrick v. Bitzer, 427 U.S. 445 (1976)..............................................................27

Gallagher v. Neil Young Freedom Concert, 49 F.3d 1442 (10th Cir. 1995)...........20

H. J. Inc. v. Northwestern Bell Tel. Co., 492 U. S. 229 (1989) ...............................6

Holt v United States, 46 F.3d 1000 (10th Cir. 1995)..................................................5

Jackson v. Metro Edison Co., 419 U.S. 345 (1974) ................................................20

Kober v. NBME, No. 09-1772 (W.D. La. June 7, 2010)..........................................17

Lapides v. University System of Georgia, 535 U.S. 613 (2002)..............................24

Leyba v. Whitley, 120 N.M. 768, 907 P.2d 172 (1995)...........................................23

Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982) ........................................20

McGuinness v. University of New Mexico School of Medicine, 170 F.3d 974 (10th
    Cir. 1998)..........................................................................................................31

Muscogee (Creek) Nation v. Oklahoma Tax Com'n, 611 F.3d 1222 (10th Cir.
    2010) ..................................................................................................................25

Powell v. NBME, 364 F.3d 79, 88 - 89 (2d Cir. 2004) ...........................................15

Press v. State University of N.Y., 388 F.Supp 2d 127 (E.D.N.Y. 2005).................27

Ramseyer v. Century Healthcare Corp., 90 F.3d 1514, 1517 n. 1 (10th Cir.1996).31

Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174 (10th Cir. 2007) ..............6

Scheuer v. Rhodes, 416 U.S.232 (1974) ...................................................................6

Stevens v. Barnard, 512 F.2d 876, 879 (10th Cir.1975).........................................31

Sutton v. United Airlines, 527 U.S. 471 (1999) ............................................. 6, 9, 30

Sutton v. Utah State School for the Deaf and Blind, 173 F.3d 122 (l0th Cir. 1999).6

Tennessee v. Lane, 541 U.S. 509 (2004) .................................................................26

Toyota Motor Mfg. Kentucky lnc. v. Williams, 534 U.S. 184 (2002) ....................10

Will v. Michigan Department of State Police, 491 U.S. 58 (1989).........................24

## STATUTES

28 U.S.C. § 1367 ...................................................................................28
28 U.S.C. §1291 .....................................................................................1
29 U.S.C. § 12189 ................................................................................21
42 U.S.C. § 12132 ................................................................................26
42 U.S.C. § 12202 ................................................................................26
42 U.S.C. § 1983 .............................................................. 4, 21, 24, 25, 29
42 U.S.C. §12101 ..................................................................... 4, 6, 7, 9
Americans With Disabilities Act Amendments Act of 2008 . 6, 9, 10, 11, 12, 16, 31
N.M.S.A. 1978 § 21-7-4 .......................................................................33
New Mexico Tort Claims Act, N.M.S.A. 1978 § 41-4-1, et seq. ...........................24

## RULES

F.R. Civ.P. 12(b)(6) ........................................................ 5, 6, 29, 30, 33
F.R.Civ. P. 12(b)(1) ..............................................................................5

## REGULATIONS

29 C.P.R.§§ 1630.2(i) ..........................................................................11
42 C.F.R. § 36.309 ...............................................................................21

## CONSTITUTIONAL PROVISIONS

U.S. Constitution Amend. XI............................................... 23, 24, 25, 26, 27, 28, 29

## STATEMENT OF PRIOR OR RELATED APPEALS

There have been no prior appeals related to this litigation.

## SUBJECT MATTER AND APPELLATE JURISDICTION

This is a direct appeal from an order of the United States District Court for the District of New Mexico which disposed of all issues in a civil case. The United States Court of Appeals has subject matter and appellate jurisdiction pursuant to 28 U.S.C. §1291.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW AND HOW THEY WERE PRESENTED AND RULED UPON IN THE PROCEEDINGS BELOW

1.      Whether the trial court erred in granting Defendants Regents of the University of New Mexico's Motion to Dismiss?

2.      Whether the Trial Court erred in granting Defendants National Board of Medical Examiners' Motion to Dismiss?

3.      Whether the Trial Court erred in deciding that Plaintiff/Appellant was not disabled for purposes of the Rehabilitation Act of 1973 and the Americans With Disabilities Act?

All of the above were presented to the trial court in the defendants' motions to dismiss and preserved for appellate review through full briefing by the parties and decision (Memorandum Opinion and Order) of the trial court entered on April 20, 2011, *Aplt. App.* 227, 240.

## STATEMENT OF THE CASE

The established and undisputed facts for purposes of this appeal are as follows:

Plaintiff "has suffered from a reading disability since elementary school, where he suffered from severe headaches and other problems after prolonged reading." Am. Compl., ¶ 10. Medical examinations administered during his childhood showed "no physical problems" with his eyes. *Id.* He learned to compensate for the difficulty in reading and was "a superior student in grade school, high school and college." *Id.* "During his entire academic career the Plaintiff was able to complete assignments requiring extensive reading with difficulty but *without accommodation*..." *Id.*, ¶ 21 (emphasis added).

In 2005, Plaintiff began medical school at UNM. Before completing the first year, he "suffered from constant and severe headaches and dangerously high blood pressure caused by the demands of reading." *Id.*, ¶ 15. As a result, he took a

medical leave from school. *Id*. He then underwent medical evaluation and treatment, through which he learned that he has Scoptic Sensitivity Syndrome ("SSS"). *Id*., ¶ 16. SSS is a condition caused by hypersensitive photoreceptors in the eyes; it is sometimes categorized as a form of dyslexia. *Id*.

Plaintiff returned to UNM in 2007, where he learned that he had to repeat the first year of courses. *Id*., ¶18.  He "requested accommodation for his disability from Defendant UNM and was refused." *Id*., ¶ 19.  "Plaintiff resumed his studies, using prescribed colored glasses to assist him in reading and prescription medicines to control his blood pressure." *Id*., ¶ 22.

He completed the first two years of medical school courses and passed the examinations. *Id*., ¶ 23. Then, he prepared to take the United States Medical Licensing Examination1 ("MLE"). *Id.*  The MLE is a three-step examination process for medical students given by Defendant/Appellee NBME. Students must complete all steps of the MLE to remain in school, graduate, and become licensed to practice medicine in New Mexico. Am. Compl., ¶ 25.

Plaintiff took Step 1 of the MLE without any accommodations, but he did not pass. *Id*., ¶ 26.  He applied for a retesting of Step 1 and formally requested accommodation for his SSS condition from Defendant NBME. *Id*., ¶ 28. In his

request, he included evaluations from a physician and a psychologist that described his condition and the accommodations that would help him. *Id*., ¶ 29.a

Defendant NBME did not immediately grant the request for accommodation; instead, it asked for further evidence of Plaintiff's SSS condition, including school records, standardized test scores, and other records that documented his condition. *Id*., ¶¶30-31.

Plaintiff then petitioned Defendant UNM for assistance in obtaining an accommodation from Defendant NBME. *Id*., ¶ 36. The Disability Committee of UNM did not assist Plaintiff in obtaining an accommodation for his second attempt at the MLE. *Id*., ¶ 37.

Plaintiff did not submit any other documentation to Defendant NBME, and he retook Step 1 of the MLE without any accommodation. *Id*., ¶ 32. He then failed the examination for the second time. *Id*., ¶ 33. Pursuant to medical school rules, Plaintiff was placed on academic leave until he passed Step 1 of the MLE. *Id*., ¶ 40.

Plaintiff then filed suit in the United States District Court for the District of New Mexico, alleging violations of 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), the Rehabilitation Act of 1973, and breach of contract.

## SUMMARY OF ARGUMENT

The district court erred in granting the defendants' motions to dismiss.    At this juncture, it cannot be said that Plaintiff/Appellant failed to make a sufficient showing to defeat a motion brought pursuant to F.R.Civ. P. 12(b)(1) and 12(b)(6). Plaintiff/Appellant's clearly falls within the definition of a disability.

Based upon these reasons, the Court should reverse the district court's decision and remand to the trial court for further proceedings.

## ARGUMENT
## THE LEGAL STANDARDS

### 1. Fed.R.Civ.P. 12(b)(1) and 12(b)(6)

The Defendants brought their motions under F.R.Civ.P. 12(b)(1) and (6).  In making a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the defendant may go beyond allegations contained in the complaint and challenge facts upon which subject matter jurisdiction depends, and when reviewing such an attack, the district court may not presume the truthfulness of the complaint's factual allegations and has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts.  Consideration of such matters outside pleadings does not convert the motion into a summary judgment motion. *Holt v United States,* 46 F.3d 1000 (10th Cir. 1995).  When a plaintiff's complaint fails to state a claim for which

there is a plausible entitlement to relief, the Court must dismiss the complaint. *See Bell Atlantic Corp. v. Twombly*, 504 U.S. 544, 545, 547 (2007).  Dismissal under F.R.Civ.P. 12(b)(6) can occur only where it appears beyond doubt that the plaintiff is not able prove any set of facts supporting his claim that would entitle him to relief. *See e.g., H. J. Inc. v. Northwestern Bell Tel. Co.,* 492 U. S. 229, 249-50 (1989).  In determining the sufficiency of a complaint on a 12(b)(6) motion, the issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support his claim.  *See Scheuer v. Rhodes*, 416 U.S.232, 236 (1974).

When ruling on a motion to dismiss, the court must accept all the factual allegations set forth in the complaint as true.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  It is not the court's role to weigh potential evidence that the parties might present a trial, but rather to determine whether the plaintiff's complaint states a legally sufficient claim upon which relief can be granted. *See Sutton v. Utah State School for the Deaf and Blind*, 173 F.3d 1226, 1236 (l0th Cir. 1999).  It is sufficient if the complaint contains, "enough facts to state a claim to relief that is plausible on its face."  *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

## 2.   The Americans With Disabilities Act (ADA) and the Americans With Disabilities Act Amendments Act of 2008 (ADAAA)(42 U.S.C. §12101)

## I.    Introduction

Today, more than 50 million Americans or 18% of the population have disabilities. Amendments to the Americans with Disabilities Act (ADA) (42 U.S.C. §12101) were signed into law on September 25, 2008 and took effect on January 1, 2009. They clarity who is covered by the laws civil rights protections, and revise the definition of disability to more broadly encompass impairments which substantially limit a major life activity.

The 2008 Amendments broaden the coverage of the ADA by overturning recent U.S. Supreme Court decision which made it more difficult to establish an individual was disabled. Under the 2008 Amendments, Congress included many more individuals through an expanded definition of disability. "Disability" is to be construed "in favor of broad coverage of individuals... to the maximum extent permitted by the terms of the ADA." Substantially limits (recall a "disability" requires a substantial limitation of a major life activity) is to be interpreted broadly and expansively in favor of the individual.

Key changes to the 2008 Amendments include:

- "Mitigating measures including assistive devices, auxiliary aids, accommodations, medical therapies and supplies (other than eye

glasses and contact lenses) have no bearing in determining whether a disability qualifies under the Jaw."

• The EEOC is directed to revise the definition of substantially limits.

• It clarifies that episodic, or conditions in remission are a disability if they substantially limit a major life activity.

• Expansion of the definition of "major life activities." The list includes walking as well as new activities not specifically recognized previously (e.g. reading, bending, and communicating). A second list includes major bodily functions such as the immune system, normal cell growth, digestive, brain, regulatory, circulating, endocrine and reproductive functions.

• It changes the definition of "regarded as" from the perception of the employer to whether the employee was the subject of a prohibited job action based on an impairment that is not transitory or minor.

• Provides employees covered due to being "regarded as" disabled, are not entitled to "reasonable accommodation."

(See www.eeoc.gov/laws/statutes/adaaa.)


**II.     Purpose of the 2008 Amendment**

In 1990, Congress intended the ADA to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and provide broad coverage. See Americans With Disabilities Act Amendments Act of 2008 (ADAAA) Sec. 2(a)(1) The goal was to insure people with physical or mental disabilities the ability to fully participate in society. While Congress expected the definition of disability under the ADA to be interpreted broadly, the Courts had substantially narrowed the definition of a handicapped individual, undermining the intent of the original federal legislation.

### III. Mitigating Measures

The ADAAA states, "the holdings of the Supreme Court in *Sutton v. United Airlines*, 527 U.S. 471 (1999) and its companion cases have narrowed the scope of protection intended to be afforded by the ADA, eliminating protection for many individuals whom Congress intended to protect." ADAAA § 2(a)(4) 1) In *Sutton* the Court considered corrective measures (i.e. eyeglasses) in determining whether the individual was disabled.

Today, an individual must still have an impairment which limits a major life activity, however corrective and mitigating measures (other than eyeglasses and contact lenses) are not considered in determining whether an employee is disabled. Mitigating measures such as medications, prosthetics, hearing aids, etc. (other than eyeglasses and contact lenses) cannot be considered in determining disability. ADAAA § 3 (4) (E) (i).

## IV.    Substantially Limits

In *Toyota Motor Mfg. Kentucky Inc. v. Williams*, 534 U.S. 184 (2002) the Court severely limited application of the substantially limits test to determine disability. The Court stated, substantially limits "needs to be interpreted strictly to create a demanding standard for qualifying as disabled and concluded an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." The impairment must also be permanent or long term." *Id.* at 198.

Under the 2008 Amendments, Congress determined "substantially limits" language must be interpreted broadly and not strictly. The Amendments now state that an "impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active. ADAAA § 3(4)(B-D).

Therefore, an individual may still be disabled if they are substantially limited when their impairment is "active." Today, depression, learning disabilities, PTSD, carpal tunnel, gout, back pain, and epilepsy are more likely to be treated as disabilities. The 2008 Amendments shift the focus from an extensive analysis on what qualifies as a disability under the law, to complying with the original intent of the law to protect individuals with disabilities, by providing reasonable accommodation who are otherwise qualified to do the job.

### V.    Major Life Activities

Prior to the 2008 Amendments, "major life activity" was not defined in the law beyond those activities of central importance to daily life. Regulations had set out "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.P.R. §§ 1630.2(i).

The 2008 Amendments include examples of life activities, and also included a new section outlining major bodily functions. Note the list is to be considered not exhaustive. The ADAAA contains language including several examples of "major life activities." "...[M]ajor life activities include, but are not limited to caring for oneself, performing manual task, seeing, hearing,

eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, communicating and working." ADAAA § 3(2)(A).

A new section covering major bodily functions was also added in 2008. It provides, "...[A] major life activity also includes the operation of a major bodily function, including but not limited to functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions. ADAAA §3(2)(B). It is clear the changes include conditions such as epilepsy, cancer, and heart conditions. The focus is no longer on conducting a detailed analysis of the individual and his limitations, but rather on making the accommodations necessary. The Amendments make it much easier for an individual to: (1) meet the definition of disability; (2) be protected from discrimination; and (3) be entitled to reasonable accommodations.

## DISCUSSION

Applying the standard and giving Mr. Cunningham as the non-moving party all the required deference, the trial court's decision cannot stand for the following reasons.

<u>**As to Defendant/Appellee National Board of Medical Examiners**</u>

**1.    The Case Is Ripe for Adjudication and the Court Has Jurisdiction over this Matter.**

Defendant NBME correctly identified the two-part analysis for determining if a case is ripe for adjudication.  *See Texas v. United States*, 523 U.S. 296 (1998), *see also Reno v. Catholic Soc. Servs.*, 509 U.S. 43, 57 n. 18 (1993).  *Texas* and similar cases require a determination based on (1) the fitness of the issues for judicial decision and, (2) the hardship to the parties of withholding court consideration.  *Id.* at 300.  However, the doctrine of ripeness does not apply in this matter because the matter is ready for adjudication and delay would cause an extreme hardship on the Plaintiff.

Apparently, the basis for the application of the ripeness doctrine as alleged by the Defendant is that the Plaintiff has no current request before the NMBE for testing or disability accommodation.  The Defendant argues that if the Plaintiff would just register for the Step 1 USMLE examination and submit documentation on his ability instead of filing a lawsuit, NMBE might accommodate him and allow him to take the test under appropriate conditions.  Defendant's Motion, p. 8.

The Defendant's allegations ignore the fact that the Plaintiff's Complaint shows that he has registered for the examination and has provided documentation required by Defendant NBME, but the Defendant has denied his request to take the USMLE with accommodations.  Amended Complaint, ¶¶ 26 – 33, *Aplt. App.* at 11. The Plaintiff first took the Step 1 USMLE in early 2009, when it was administered in a small room with bright, florescent lighting, which caused him to experience headaches and difficulty in concentration.  *Id.* ¶¶ 26 and 27.

The Plaintiff failed the USMLE and registered to take the examination in June 2009, and requested reasonable accommodation for his disability, providing NMBE with documents from a physician, who certified his disability, and a clinical psychologist, who described the Plaintiff's disability and the accommodation needed by him to take the Step 1 examination.  *Id.* ¶¶ 26, 28 and 29, *Aplt. App.* at 11.  NBME denied the Plaintiff's request for accommodation in a letter dated May 20, 2009, purportedly because there was no record of any accommodation in his educational history, and demanded additional documentation to support his claim of disability.  The Defendant's letter required the Plaintiff to submit records going back to elementary school, including standardized test scores, contemporaneous reports from teachers, tutors or

treatment providers, and records showing the chronic course and impact of his disability, additional reports from employment and other sources that the Defendant claimed was necessary to document his disability, including further reports from a psychologist. *Id.* ¶¶ 30 and 31.

Unsurprisingly, since the demand for further documentation was made in late May and the USMLE was to be given in June 2009, the Plaintiff was unable to acquire the great volume of records going back to his elementary school days. *Id.* ¶ 32. The Plaintiff was forced to take the June USMLE under conditions similar to the first examination, and failed to pass. *Id.* ¶¶ 32 and 33.

The Defendant alleges that it needs the documentation regarding the Plaintiff's disability to ensure the "integrity of the USMLE." Defendant's Motion, p. 5, *Aplt. App.* at 74, citing *Powell v. NBME,* 364 F.3d 79, 88 - 89 (2d Cir. 2004). The Defendant's concern appears to be that affording a person such as the Plaintiff with an accommodation without extensive documentation might permit persons without *"bona fide* disabilities" to compete unfairly with the non-disabled. Defendant's Motion, p. 5. However, the extent of the accommodation needed by the Plaintiff is adequate, non-florescent lighting that does not produce a glare or reflection from the test papers. *See* Amended Complaint, ¶¶ 17 and 27. It is

difficult to see how such a minimal accommodation could allow the Plaintiff to compete unfairly with other medical students taking the test.  In fact, it could be argued that affording all test-takers with adequate and comfortable lighting would more fairly reflect their abilities and improve the testing procedure.  Moreover, *Powell* was decided before the advent of the ADAAA.

The Plaintiff has had his disability since childhood, when he suffered from headaches and other problems after prolonged reading.  Amended Complaint ¶ 10. He remained undiagnosed until he was in medical school in 2006, that he suffered from Scoptic Sensitivity Syndrome, a form of dyslexia.  Until he was diagnosed the Plaintiff compensated for his disability by perseverance and intelligence.  *Id.* ¶¶ 11 - 13, and 16.  He has no records that show a record of disability since elementary school as demanded by Defendant NBME.  Providing records prior to 2006 would be an exercise in futility because he was not diagnosed until 2006[1]. Defendant NBME had all of the documentation that existed on the Plaintiff's disability when it rejected his request.  Considering that the further documentation

---

[1]*The report of clinical psychologist Janice K. Griffith, provided to the Defendant as documentation of the Plaintiff's disability prior to the June USMLE, documents that the Plaintiff had vision and headache problems all of his life but remained undiagnosed until 2006.*

requested would show no record of disability and accommodation, it is entirely safe to say that a further request would also be rejected if the Plaintiff had been able to comply in time for the June 2009, USMLE, or had he taken the additional steps of extending the test window as described by the Defendant in its Motion, pp. 6 and 8.

The present case is different from the facts as represented by the Defendant in *Kober v. NBME,* No. 09-1772 (W.D. La. June 7, 2010)[2].  *See* Defendant's Motion, pp. 8 and 9.  In *Kober* there was apparently some further documentation for Kober to produce that would show a disability.  There are no "hypothetical, contingent events" here.  *Id.*  The Defendant has all of the documentation that relates to the Plaintiff's disability and need for accommodation that exists, and has rejected his request.  As stated in the first paragraph of this section, there is no issue of ripeness in this matter, the Plaintiff has provided everything needed for the Defendant's decision on accommodation and has been wrongfully refused.  Further applications would be futile.  Note that the Defendant has had the Amended Complaint outlining the complete facts underlying the Plaintiff's disability and his

---

[2]*The case is apparently unreported since the Plaintiff could not find it in the Federal Supplement.*

inability to provide more documentation that is relevant since it was filed and served on March 14, 2010. The Defendant has made no offer to provide reasonable accommodation and the Court may presume that it does not intend to do so.

Although ripeness is not an issue in this matter, the Court should be aware that the Plaintiff has been prejudiced by the Defendant's failure to provide accommodation, and withholding consideration of the issues by the Court will cause undue hardship. *See Texas.* because the minimal accommodation required by the Plaintiff has been refused he has been unable to return to medical school because passing the Step 1 USMLE is a requirement for continuing his medical education and receiving a license to practice medicine. Amended Complaint, ¶¶ 23 - 25. The Plaintiff is presently unable to continue in medical school and is danger of being disqualified because of the UNM School of Medicine rule which requires a student to complete his studies within six (6) years. *Id.* ¶ 42.

Further, a medical student is limited to three (3) attempts to pass the USMLE, and is disqualified from medical school if he or she does not pass the third time. *Id.* ¶ 34. If, as the Defendant claims he should, the Plaintiff registers for the examination he risks his medical career if he takes the test without a

judgment entitling him to accommodation.    The Court should reject the Defendant's argument regarding ripeness in regard to the ADA and contract claims. *See* Defendant's motion, pp. 7 - 9.

### 2.    The Plaintiff/Appellant Has Requested Injunctive Relief.

The Plaintiff's "cut-and-paste" Complaint (as characterized by the Defendant, p. 11) adequately requests relief other than money damages from the Defendant.    The Defendant's comment and inability to decipher the Complaint notwithstanding, the Plaintiff has presented a clear and concise continuum of the events leading to the claims, and has requested the Defendant be ordered to provide accommodation during testing.    *See* Amended Complaint, prayer for relief, ¶¶ b and g.    A court may exercise its discretion to fashion injunctive relief to remedy the effects of discrimination.    *Briscoe v. Fred's Dollar Store*, 24 F.3d 1026, 1028 (8th Cir. 1994).

### 3.    NBME Is a State Actor and May Have Liability Under the Rehabilitation Act.

The various tests to determine if a party is a state actor described by the Defendant in its Motion, pp. 12 and 13, require a close association or close interests between the state and the private party.    *See e.g., Jackson v. Metro Edison*

*Co.*, 419 U.S. 345, 351 (1974).   The Tenth Circuit has found that a private individual can be a state actor, "because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).  The Supreme Court "has taken a flexible approach to the state action doctrine, applying a variety of tests to the facts of each case, " *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995).

Applying this flexible approach, Defendant NBME is a state actor in New Mexico.   The close association of interests between UNM and NBME in evaluating the abilities of students and physicians as expressed in the Defendant's Motion, p. 3, is evidence of a joint enterprise.  *See Burton v. Wilmington Park Parking Authority*, 365 U.S. 715, 725 (1961).  As explained by the Defendant, NBME sets testing goals for applicants, applying three (3) Steps as components of a comprehensive examination procedure that is on a specific time schedule. Defendant's Motion, pp. 3 and 6.  The Steps are closely coordinated with the UNM Medical School, which requires students to complete the Steps defined by NBME before advancing to further classes or obtaining license to practice medicine in New Mexico.  *See* Amended Complaint, ¶¶ 23 - 25, 34, and 40.  The Defendant has

---

"acted together with" the medical school in a manner that makes it a state actor subject to an action under § 1983.

### 4.    NBME Breached Its Contract With the Plaintiff.

The Plaintiff's breach of contract claim rests upon several bases.  First, NMBE does not provide its services for free, he paid to take the examination as a necessary prerequisite for his medical education and licensing.  In return for payment he expected to receive fair treatment in the reasonable accommodation of any disability that limited his ability to take the examination.  The ADA, Title III, requires NBME to provide accessible arrangements for disabled individuals in its testing operations.  29 U.S.C. § 12189.  It does not control the amount of money charged for testing or other arrangements between the testing agency and the test-taker.  *See,* 42 C.F.R. § 36.309, where the regulations on examinations concern the physical layout of the testing facilities and other conditions involved in taking the examinations, but do not provide standards for the type and amount of documentation to establish a disability.

The Plaintiff's breach of contract claim is based upon the contractual agreement implied by his registration to take the USMLE and the unreasonable demands placed upon him to establish a disability when he had already sent the

Defendant all of the relevant documents that existed.  Amended Complaint, ¶¶ 28 -

33, and Count V, at 11.  The actions of NBME breached the implied covenant of

good faith and fair dealing inherent in the dealings between the parties.  As a result

of the breach, the Plaintiff's opportunity to attend medical school and acquire a

medical license has been delayed or extinguished and he is entitled to damages for

loss of income.  Count V.

Second, the fact that the UNM School of Medicine requires USMLE

examinations by NBME as a condition of attendance and graduation is indicative

of an agreement between the Defendant and UNM.  *See* Amended Complaint, ¶¶

59 and 60, *Aplt. App.* at 23.  At this point the exact conditions of the arrangement

are unknown because there has been no discovery.  However, it is safe to assume

that UNM requires adherence to state and federal laws regarding disabled persons

in any such agreement with the Defendant.  In any event, the Plaintiff was an

intended beneficiary of the agreement between UNM and NBME to provide

testing.  The contract provides benefits to UNM because it provides the medical

school with standards and scores in relation to students, and it benefits the students

by providing a means to test their own abilities and deficits and to establish their

qualifications to remain in medical school.

As a third-party beneficiary to the contract, the Plaintiff has standing to enforce its provisions. *See Leyba v. Whitley*, 120 N.M. 768, 771, 907 P.2d 172, 175 (1995) ("Although courts stop short of declaring an intended third-party beneficiary to be in privity of contract, such a party is accorded traditional contract remedies with respect to the bargain intended for his or her benefit." ).  The agreement between the Defendant and UNM may or may not include express provisions applicable to the Plaintiff's contract claim regarding the Defendant's non-performance in denying him the opportunity to take the USMLE under reasonable conditions, and the Plaintiff should have an opportunity to explore the terms.  The issue in a motion to dismiss is not whether the plaintiff will ultimately prevail, but whether he plaintiff is entitled to offer evidence to support his claim. *Scheuer.*  Further, the Plaintiff should be able to enforce the covenant of good faith and fair dealing where it may apply to his claims.

## Defendant/Appellee University of New Mexico

### 1.    The Plaintiff's Claims Are Not Barred by the Eleventh Amendment.

Defendants University of New Mexico Board of Regents and the University of New Mexico School of Medicine (collectively, "UNM") are state agencies or political

subdivisions of the State of New Mexico, but are not immune from suit under the facts and claims in this case.

### Eleventh Amendment Immunity under 42 U.S.C. § 1983.

A state (including a state official sued in an official capacity) is not a "person" for the purpose of 42 U.S.C. §1983. *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989). Damages from a state treasury are not available from an action under 42 U.S.C. § 1983. *See, e.g., Lapides v. University System of Georgia*, 535 U.S. 613, 617–18 (2002). Where a state has not waived immunity, claims for money damages are barred by the Eleventh Amendment. 42 U.S.C. § 1983 "does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity." *Will* at 66. New Mexico has not waived immunity for deprivation of rights claims. *See e.g.*, New Mexico Tort Claims Act, N.M.S.A. 1978 § 41-4-1, et seq.

However the Eleventh Amendment does not bar a claim for prospective relief against a state or state officials in their official capacities where the relief does not directly involve money damages. *Ex parte Young*, 209 U.S. 123 (1908); *Edelman v. Jordan,* 415 U.S. 651 (1974); *Muscogee (Creek) Nation v. Oklahoma Tax Com'n*, 611

F.3d 1222, 1227 (10th Cir. 2010).    Insofar as the Plaintiff's Complaint requests

prospective relief it is not barred by the Eleventh Amendment.

An examination of the Plaintiff's Complaint indicates that he is requesting an

opportunity to attend medical school under accommodation for his disability.    Amended

Complaint, ¶¶ 35 - 44, Count I, ¶¶ 45 - 47, and prayer for relief, a and b, *Aplt. App.* at 12-

14.    The Plaintiff's prayer for relief in Count I, the § 1983 claim against UNM, requests in

part:

>    a.        Reinstatement and enrollment in the Plaintiff's normal
> course of study at UNM.
>
>    b.        Extension of Defendant UNM's six year rule to toll the
> time that the Plaintiff was without accommodation for his
> disability or for the time necessary for the Plaintiff to receive
> accommodation to complete his Step 1 requirements and
> complete his normal course of study.

The relief requested is prospective and injunctive in nature and the Plaintiff has

alleged irreparable harm where he is presently barred from attending classes and unless

he is permitted to finish medical school before October, 2012, he will be disenrolled and

not permitted to finish medical school because of the Defendant's six (6) year rule.    *Id.* ¶¶

39 - 44, 46 and 47.    Because a part of the relief requested under § 1983 is prospective, the

Defendant is not entitled to dismissal for lack of jurisdiction.


**Eleventh Amendment Immunity Under the ADA.**

The Plaintiff's claims under the Americans with Disabilities Act ("ADA") are not barred by the Eleventh Amendment.  Although Defendant/Appellee UNM presented an interesting argument that Title II of the ADA should not apply in this case because of the state's immunity under the Eleventh Amendment, the fact is that the Supreme Court has decreed that Title II does apply to state governments.  Title II, 42 U.S.C. § 12132, states:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation or denied the benefits of the services, programs or activities of a public entity,

In *Tennessee v. Lane*, 541 U.S. 509 (2004), the Supreme Court closely examined the conditions that compelled congress to enact the ADA and Title II.  The analysis included such matters as an examination of the legislative history of Title II, and the materials relied upon in enacting the legislation.  *Lane* at 511.  The Court then considered the statute itself in light of the Eleventh Amendment immunity alleged by the Defendant herein, finding that Title II specifically abrogated the immunity of a state in relation to the federal legislation.  *Id.* at 517-18.  42 U.S.C. § 12202 states:

> A State shall not be immune under the Eleventh Amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter.

The Court further considered whether or not Congress had the power to abrogate the power of the state in the light of its opinion in *Fitzpatrick v. Bitzer,* 427 U.S. 445

(1976), finding that "Congress can abrogate a State's sovereign immunity when it does so pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment to enforce the substantive guarantees of that Amendment." *Lane* at 518. The *Lane* Court, as did the Court in this case, concluded that the abrogation of state powers and immunities under the Eleventh Amendment was a proper exercise of federal authority enforce the remedial provisions of Title II. *Id.* at 534.

The district court cases from other jurisdictions cited by the Defendant do not change the fact that the Eleventh Amendment does not provide a basis for dismissal of the present action for lack of jurisdiction. *See* Defendant's Motion, p. 14. A representative case from the Defendant's Motion, *Press v. State University of N.Y.*, 388 F.Supp 2d 127 (E.D.N.Y. 2005), found that a student at a state university who alleged he was denied accommodation and subjected to retaliation by the university faculty was precluded from his ADA claim by the Eleventh Amendment. The New York Court's opinion was apparently based, at least to a great degree, on the court's finding that education was not a constitutional or fundamental right and not subject to strict scrutiny. *Id.* at 134.

The *Press* court's decision seems unduly restrictive in comparison to the affirmation of Congress' right to abrogate the rights of the states in enacting Title II as expressed in *Lane*, and was admittedly contrary to the decisions of other courts in the

Second Circuit, the decision does not apply here. *See Press* at 133 ("[T]he Court notes there is a division in the Second Circuit with regard to the application of *Lane*."). One thing that distinguishes *Press* from the present case is that the Plaintiff clearly has a property right in continuing his education at the UNM School of Medicine, and property rights are protected by the Constitution. The Plaintiff has a written contract with UNM that prevents him from seeking employment while he is on academic leave. *See* Amended Complaint, ¶ 41. Further, there is a property interest involved in obtaining a medical license after he graduates. The New York case and the cases from other jurisdictions are not binding on this Court and absent a Tenth Circuit case that agrees with the Defendant, the New Mexico District Court was correct to rely on *Lane*. This Court should uphold the trial court as to the Eleventh Amendment Immunity question.

### The Trial Court Had Jurisdiction Over the Appellant's Contract Claims

The United States federal courts have jurisdiction to hear additional claims substantially related to the original claim even though the court would lack the subject-matter jurisdiction to hear the additional claims independently. 28 U.S.C. § 1367. The legislature of New Mexico has waived sovereign immunity from actions on written contracts. N.M.S.A. 1978 § 37-1-23(A). The existence of a written contract between the Plaintiff and UNM is stated in the Amended Complaint, and is inherent in the rules of the

Medical School that define the obligations of students such as the Plaintiff and the obligations of the University.  Whether or not the contract is sufficient to maintain a claim for breach is beyond the scope of the limited review of evidence permitted by Rule 12(b)(1).  *See Holt*.

> ### 2.    The Plaintiff's Complaint States a Claim for Relief.
>
> ### The Plaintiff's Claims Under 42 U.S.C. § 1983.

The Defendant's argument under Rule 12(b)(6) appears to be identical to its Eleventh Amendment defense argued above.  The Defendant argues that UNM and its officials are "arms of the state," and are not "persons" subject to an action under § 1983. Defendant's Motion, p. 17.  Because the Plaintiff is requesting prospective relief under § 1983, the Defendant's arguments are not applicable and the Plaintiff's action under the statute should not be dismissed.  *See Edelman v. Jordan*, and other authorities cited above.

> ### The Plaintiff's Claims Under the ADA.

In its Rule 12(b)(6) argument, Defendant's Motion, pp. 18 - 22, UNM argues that the Plaintiff is not disabled and thus, his claim should be dismissed.  The nature of a judicial inquiry under 12(b)(6) is whether or not a plaintiff's complaint states a claim for which there is a plausible entitlement to relief.  *Twombly*, 504 U.S. at 545.  In a motion to

dismiss, the court must accept all the factual allegations set forth in the complaint as true. *Erickson*, 551 U.S. at 94. The Court does not weigh evidence that the parties might present a trial, but is concerned as to whether the plaintiff's complaint states a legally sufficient claim upon which relief can be granted. *Sutton*, 173 F.3d at 1236.

The Plaintiff has made plausible allegations in his complaint concerning the existence of a disability. He describes his vision and reading problems from childhood that persisted through his admission to medical school, and the discovery that his problems were symptomatic of Scoptic Sensitivity Syndrome. *See* Amended Complaint, ¶¶ 10 – 16, *Aplt. App.* at 8-9. He alleges that he presented medical records and opinions to NBME and UNM to support his claim of disability. *Id.* ¶¶ 29 and 36.

In the face of the numerous allegations in the Complaint, where the Plaintiff describes his problems with reading, taking tests, headaches and pleas to UNM for assistance in his disability, the Defendant claims that, [P]laintiff does not claim that he has a record of such an impairment, nor that he was regarded as having an impairment." Defendant's Motion, p. 18, *Aplt. App.* at 61. This statement is contrary to the facts alleged in the Complaint. The arguments following the statement as to whether or not the Plaintiff really has a disability that might affect his employment or major life functions are far beyond the scope of Rule 12(b)(6). It is no accident that the principal case cited by the Defendant, *McGuinness v. University of New Mexico School of Medicine*, 170

F.3d 974 (10th Cir. 1998), was decided on summary judgment rather than a motion to dismiss. The issues argued are factual. Moreover, *McGuinness* was decided prior to the ADAAA's liberalization of the standards for finding of a disability and for accommodation, as discussed earlier herein.

Note also that no affidavits or matters outside of the pleadings are attached to the Defendant's Motion which might convert the matter to a Rule 56 proceeding. We decline to be drawn into an argument suitable for summary judgment proceedings when there has been no discovery in this case.

### Remaining Factual Issues Raised By the Defendant.

The Defendant raises further factual issues in regard to whether or not UNM discriminated against the Plaintiff and proximate cause. Defendant's Motion, pp. 22 – 24, *Aplt. App.* at 65-67. These issues are properly the subject of summary judgment proceedings or trial. Whether or not accommodation of the Plaintiff would "fundamentally alter the nature of the service, program or activity," p. 22, is a purely factual determination. So is the issue of proximate cause raised at pp. 23 and 24.

Causation is normally a jury question. *See e.g., Chavez v. Manville Products Corp.*, 108 N.M. 643, 777 P.2d 371 (1989); *Stevens v. Barnard*, 512 F.2d 876, 879 (10th Cir.1975). However, whether a plaintiff sufficiently alleges causation is a legal question. *See Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1517 n. 1 (10th Cir.1996). If

the Defendant is arguing that the Plaintiff has not alleged sufficient facts to support causation, the Court need only to look at ¶¶ 36 - 39, where the Amended Complaint alleges that the Plaintiff was denied the opportunity to submit his claim for accommodation to the UNM Disability Committee, and was denied assistance by faculty members. *Aplt. App.* at 12-13. The allegations at ¶ 39, that the determination that the Plaintiff had a disability would have materially assisted him in receiving accommodation from NBME, establish a plausible claim for causation. Certainly, an opportunity to present his case to the Disability Committee would have given him a reasonable opportunity to argue that the rules should be modified to allow him to continue classes while sorting out his difficulties with NBME. Note also that the existence of a UNM Disability Committee implies a duty or enterprise by UNM to assist students who are claiming a disability, and a fair and impartial Committee could plausibly have assisted him in those difficulties.

**5.      The Plaintiff Has Stated a Contract Claim Against UNM.**

The Plaintiff has alleged that a written contract existed between UNM and him, and that rules existed that obligated both parties. Amended Complaint, ¶¶ 39, 40, 50 – 54, *Aplt. App.* at 13, 18. The nature of the contract and any contractual terms in the rules involve questions of fact and law that are not subject to determination in a motion to dismiss. *See* Section 1, above. Further, no discovery has been made that might permit

the parties to argue the contractual issues and permit the court to make an informed decision.

### 6.        UNM School of Medicine Was Properly Joined.

N.M.S.A. 1978 § 21-7-4, cited by the Defendant, provides that the Board of Regents is empowered with "the right, as such, of suing and being sued." § 21-7-3, has to do with the Board of Regent's powers to manage University property, construct buildings, and handle the finances of the University.  Nothing in either statute, or in § 21-7-8, also mentioned by the Defendant, prevents the School of Medicine from being named as a party.

### <u>CONCLUSION</u>

The Trial Court erred in granting the Defendants/Appellees' Rule 12(b)(1) and 12(b)(6) Motions.  At minimum, Mr. Cunningham was entitled to go forward and present evidence on each of his claims.  For the foregoing reasons, the trial court's decision should be reversed and this case should be remanded to the trial court for further proceedings, allowing Mr. Cunningham, the Plaintiff, a full and fair opportunity to develop and present his case consistent herewith.

## <u>STATEMENT OF REQUESTED RELIEF</u>

Plaintiff/Appellant requests that the judgment of the United States District Court for the District of New Mexico be reversed and that the case be remanded with instructions to allow the case to proceed on the court's trial docket.

## <u>REQUEST FOR ORAL ARGUMENT</u>

The matters herein presented represent one or more areas of law that require elucidation in the Tenth Circuit. Oral argument may prove beneficial to the Court in further defining these issues, and may materially assist the Court in the disposition of this appeal. An oral argument hearing is therefore respectfully requested.

Respectfully Submitted:


/s/ Santiago E. Juárez
Santiago E. Juárez
Attorney for Plaintiff/Appellant
1822 Lomas Boulevard, NW
Albuquerque, NM  87104
(505) 246-8499
(505) 246-8599 (Facsimile)

## CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF APPELLATE PROCEDURE 32(a)(7)(B) and (C)

I hereby certify that the foregoing Appellant's Brief complies with Federal Rule of Appellate Procedure 32(a)(7)(B)(i) in that the "Word Count" utility provided with Microsoft Word, the word processing software utilized in the preparation of this document, indicates a total word count of 7,905, which is less than the 14,000 words permitted pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B)(i). This certificate is submitted in compliance with Federal Rule of Appellate Procedure 32(a)(7)(C).

/s/ Santiago E. Juárez
Santiago E. Juárez
Attorney for Appellant

## <u>ATTORNEY'S CERTIFICATE OF MAILING AND ELECTRONIC FILING</u>

**I HEREBY CERTIFY** that a true and correct copy of Appellant's Opening Brief was mailed to opposing counsel this 28th day of December, 2011, via United States Postal Service First Class Mail. Undersigned further certifies that (1) there are no redactions that needed to be made to this brief; (2) that all attachments to this brief have been scanned and are being submitted together with this brief; (3) that this digital submission, and all accompanying attachments have been scanned with the latest version of Symantec Anti-Virus program; and (4) that this digital submission was sent via electronic mail both to the Clerk of the Court of Appeals and to opposing counsel of record on this 28th day of December, 2011.

/s/ Santiago E. Juárez
Santiago E. Juárez

---

**ATTACHMENT 1:  DOCKET SHEET, DISTRICT OF NEW MEXICO
CIVIL NO. CIV 10-0451 BB/RLP
CUNNINGHAM v. UNM BOARD OF REGENTS, ET AL.**

## U.S. District Court
## District of New Mexico − Version 4.2 (Albuquerque)
## CIVIL DOCKET FOR CASE #: 1:10−cv−00451−BB−ACT

| | |
|---|---|
| Cunningham v. University of New Mexico Board of Regents et al | Date Filed: 05/11/2010 |
| Assigned to: Chief Judge Bruce D. Black | Date Terminated: 04/20/2011 |
| Referred to: Magistrate Judge Alan C. Torgerson | Jury Demand: Plaintiff |
| Case in other court:  US Court of Appeals, 11−02103 | Nature of Suit: 440 Civil Rights: Other |
| Cause: 42:1983 Civil Rights Act | Jurisdiction: Federal Question |

**Plaintiff**

**Chad Cunningham**                     represented by     **Jill M Collins**
Beall &Biehler
6715 Academy Rd NE
Albuquerque, NM 87109
(505) 828−3600
Fax: (505) 828−3900
Email: jcollins@beall−biehler.com
*TERMINATED: 02/14/2011*
*ATTORNEY TO BE NOTICED*

**Santiago E Juarez**
1822 Lomas Boulevard, NW
Albuquerque, NM 87104
505−246−8499
Fax: 505−246−8599
Email: santiagojuarezlaw@gmail.com
*ATTORNEY TO BE NOTICED*

**Dennis W. Montoya**
Montoya Law, Inc.
PO Box 15235
Rio Rancho, NM 87174−0235
(505) 246−8499
Fax: (505) 246−8599
Email: dmontoya@montoyalaw.com
*TERMINATED: 04/16/2011*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**University of New Mexico Board of Regents**     represented by     **Alfred A Park**
Park &Anderson, LLC
707 Broadway Blvd. NE
Suite 202
Albuquerque, NM 87102
505−246−2805
Fax: 505−246−2806
Email: apark@parklawnm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Erika E Anderson**
Park &Anderson, LLC
707 Broadway Blvd. NE
Suite 202
Albuquerque, NM 87102
505−246−2805
Fax: 505−246−2806

Email: eanderson@parklawnm.com
*ATTORNEY TO BE NOTICED*

**Lawrence M Marcus**
Park &Anderson, LLC
707 Broadway Blvd. NE
Suite 202
Albuquerque, NM 87102
505−246−2805
Fax: 505−246−2806
Email: lmarcus@parklawnm.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**University of New Mexico School of**     represented by   **Alfred A Park**
**Medicine**                                                (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Erika E Anderson**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Lawrence M Marcus**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**Defendant**

**National Board of Medical Examiners**     represented by   **Bill Chappell , Jr.**
                                                            Chappell Law Firm
                                                            Albuquerque Centre, Suite 150
                                                            6001 Indian School Rd. NE
                                                            Albuquerque, NM 87110
                                                            505−878−9600
                                                            Fax: 505−878−9696
                                                            Email: billc@chappellfirm.com
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Ronda R. Fisk**
                                                            Osborn Maledon, P.A.
                                                            2929 North Central Avenue
                                                            Suite 2100
                                                            Phoenix, AZ 85012
                                                            602−640−9363
                                                            Fax: 602−640−6063
                                                            Email: rfisk@omlaw.com
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Shane Ham**
                                                            Osborn Maledon P.A.
                                                            2929 North Central Avenue
                                                            Suite 2100
                                                            Phoenix, AZ 85012
                                                            602−640−9380
                                                            Fax: 602−664−2070
                                                            Email: sham@omlaw.com
                                                            *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
| --- | --- | --- |

| 05/11/2010 | 1 | COMPLAINT **for Violation of Civil Rights** against National Board of Medical Examiners, University of New Mexico Board of Regents, University of New Mexico School of Medicine ( Filing Fee − Online Payment), filed by Chad Cunningham. (Attachments: # 1 Civil Cover Sheet)(Montoya, Dennis) (Entered: 05/11/2010) |
| --- | --- | --- |
| 05/11/2010 | | Circuit Judge Paul Kelly, Jr and Chief U.S. Magistrate Judge Richard L. Puglisi assigned. (mr) (Entered: 05/11/2010) |
| 05/11/2010 | 2 | MINUTE ORDER by the Clerk of Court, District Judge Bruce D. Black added. Circuit Judge Paul Kelly, Jr no longer assigned to case. (mjr) (Entered: 05/11/2010) |
| 05/14/2010 | | Filing Fee Received: $ 350 receipt number 1084−1522476 re 1 Complaint, filed by Chad Cunningham (Payment made via Pay.gov)(Montoya, Dennis) (Entered: 05/14/2010) |
| 05/14/2010 | 3 | AMENDED COMPLAINT **(Caption Corrected)** against National Board of Medical Examiners, University of New Mexico School of Medicine, University of New Mexico Board of Regents., filed by Chad Cunningham.(Montoya, Dennis) (Entered: 05/14/2010) |
| 06/30/2010 | 4 | NOTICE by Chad Cunningham **of Unavailability** (Montoya, Dennis) (Entered: 06/30/2010) |
| 08/02/2010 | | Summons Issued as to National Board of Medical Examiners, University of New Mexico Board of Regents, University of New Mexico School of Medicine. (jm) (Entered: 08/02/2010) |
| 08/09/2010 | 5 | SUMMONS Returned Executed by Chad Cunningham. University of New Mexico School of Medicine served on 8/4/2010, answer due 8/25/2010. (Montoya, Dennis) (Entered: 08/09/2010) |
| 08/09/2010 | 6 | SUMMONS Returned Executed by Chad Cunningham. University of New Mexico Board of Regents served on 8/4/2010, answer due 8/25/2010. (Montoya, Dennis) (Entered: 08/09/2010) |
| 08/26/2010 | 7 | ANSWER to 3 Amended Complaint **For Violation Of Civil Rights Under 42 U.S.C. §1983 And Failure To Accommodate For Disability Under The Americans With Disabilities Act,The Rehabilitation Act Of 1973, And Breach Of Contract** by University of New Mexico Board of Regents, University of New Mexico School of Medicine.(Park, Alfred) (Entered: 08/26/2010) |
| 08/26/2010 | 8 | NOTICE of Appearance by Alfred A Park on behalf of University of New Mexico Board of Regents, University of New Mexico School of Medicine (Park, Alfred) (Entered: 08/26/2010) |
| 09/23/2010 | 9 | MOTION to Dismiss by University of New Mexico Board of Regents, University of New Mexico School of Medicine. (Park, Alfred) (Entered: 09/23/2010) |
| 09/29/2010 | 10 | NOTICE of Appearance by Bill Chappell, Jr on behalf of National Board of Medical Examiners (Chappell, Bill) (Entered: 09/29/2010) |
| 09/29/2010 | 11 | Unopposed MOTION for Pro Hac Vice **Ronda Fisk** by National Board of Medical Examiners. (Chappell, Bill) (Entered: 09/29/2010) |
| 09/29/2010 | 12 | Unopposed MOTION for Pro Hac Vice **Shane M. Ham** by National Board of Medical Examiners. (Chappell, Bill) (Entered: 09/29/2010) |
| 09/30/2010 | 13 | MOTION to Stay **Discovery until the Court Rules on Defendant's Motion to Dismiss Plaintiff's Amended Complaint with Prejudice** by University of New Mexico Board of Regents, University of New Mexico School of Medicine. (Park, Alfred) (Entered: 09/30/2010) |
| 10/01/2010 | 14 | ORDER by Chief Magistrate Judge Richard L. Puglisi granting 11 Motion for Pro Hac Vice for Rhonda R. Fisk representing Defendant National Board of Medical Examiners. [THIS IS A TEXT−ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (cg) (Entered: 10/01/2010) |

| | | |
|---|---|---|
| 10/01/2010 | 15 | ORDER by Chief Magistrate Judge Richard L. Puglisi granting 12 Motion for Pro Hac Vice for Shane M. Ham representing Defendant National Board of Medical Examiners. [THIS IS A TEXT−ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (cg) (Entered: 10/01/2010) |
| 10/04/2010 | 16 | First MOTION to Dismiss **Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)** by National Board of Medical Examiners. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Chappell, Bill) (Entered: 10/04/2010) |
| 10/08/2010 | 17 | NOTICE by Chad Cunningham **Extension to Response to Motion to Dismiss** (Montoya, Dennis) (Entered: 10/08/2010) |
| 10/13/2010 | 18 | ORDER STAYING DISCOVERY by Chief Magistrate Judge Richard L. Puglisi granting 13 Motion to Stay. (cg) (Entered: 10/13/2010) |
| 10/18/2010 | 19 | RESPONSE in Opposition re 9 MOTION to Dismiss **by UNM Defendants** filed by Chad Cunningham. (Montoya, Dennis) (Entered: 10/18/2010) |
| 10/18/2010 | 20 | RESPONSE in Opposition re 16 First MOTION to Dismiss **Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) by Defendant National Board of Medical Examiners** filed by Chad Cunningham. (Montoya, Dennis) (Entered: 10/18/2010) |
| 11/01/2010 | 21 | NOTICE by University of New Mexico Board of Regents re 19 Response in Opposition to Motion **Extension of time to file Reply** (Park, Alfred) (Entered: 11/01/2010) |
| 11/03/2010 | 22 | NOTICE by Chad Cunningham **of Unavailability** (Montoya, Dennis) (Entered: 11/03/2010) |
| 11/03/2010 | 23 | NOTICE by National Board of Medical Examiners re 20 Response in Opposition to Motion **Unopposed Extension to FIle Reply in Support of Motion to Dismiss** (Chappell, Bill) (Entered: 11/03/2010) |
| 11/08/2010 | 24 | REPLY to Response to Motion re 16 First MOTION to Dismiss **Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)** filed by National Board of Medical Examiners. (Ham, Shane) (Entered: 11/08/2010) |
| 11/08/2010 | 25 | NOTICE of Briefing Complete by National Board of Medical Examiners re 16 First MOTION to Dismiss **Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)** filed by National Board of Medical Examiners (Ham, Shane) (Entered: 11/08/2010) |
| 11/08/2010 | 26 | REPLY to Response to Motion re 9 MOTION to Dismiss filed by University of New Mexico Board of Regents, University of New Mexico School of Medicine. (Park, Alfred) (Entered: 11/08/2010) |
| 11/09/2010 | 27 | NOTICE of Briefing Complete by University of New Mexico Board of Regents, University of New Mexico School of Medicine re 9 MOTION to Dismiss filed by University of New Mexico School of Medicine, University of New Mexico Board of Regents (Park, Alfred) (Entered: 11/09/2010) |
| 01/28/2011 | 28 | NOTICE of Appearance by Jill M Collins on behalf of Chad Cunningham (Collins, Jill) (Entered: 01/28/2011) |
| 02/14/2011 | 29 | NOTICE by Chad Cunningham **NOTICE TO WITHDRAW AS ATTORNEY OF RECORD − JILL M. COLLINS** (Collins, Jill) (Entered: 02/14/2011) |
| 03/28/2011 | 30 | MINUTE ORDER reassigning Magistrate Judge Karen B. Molzen. Magistrate Judge Richard L. Puglisi no longer assigned to case. (ah) (Entered: 03/28/2011) |
| 03/29/2011 | 31 | MINUTE ORDER reassigning Magistrate Judge Alan C. Torgerson. Magistrate Judge Karen B. Molzen no longer assigned to case. (ah) (Entered: 03/29/2011) |
| 04/07/2011 | 32 | NOTICE of Attorney Substitution: Alfred A Park (Park, Alfred) (Entered: 04/07/2011) |
| 04/16/2011 | 33 | NOTICE of Attorney Substitution: Santiago E Juarez substituted for Dennis W. Montoya (Juarez, Santiago) (Entered: 04/16/2011) |

Appellate Case: 11-2103    Document: 01018768791    Date Filed: 12/28/2011    Page: 47

| 04/20/2011 | <u>34</u> | MEMORANDUM OPINION by Chief Judge Bruce D. Black granting UNM's <u>9</u> MOTION to Dismiss and granting NBME's <u>16</u> First MOTION to Dismiss **Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)**. (mjr) (Entered: 04/20/2011) |
| 04/20/2011 | <u>35</u> | ORDER by Chief Judge Bruce D. Black granting Defendants' Motions to Dismiss <u>9</u> and <u>16</u> . (mjr) (Entered: 04/20/2011) |
| 05/19/2011 | <u>36</u> | NOTICE OF APPEAL as to <u>35</u> Order on Motion to Dismiss, <u>34</u> Memorandum Opinion by Chad Cunningham. ( Filing Fee − Online Payment) (Juarez, Santiago) (Entered: 05/19/2011) |
| 05/19/2011 | | Filing Fee Received: $ 455 receipt number 1084−2033388 re <u>36</u> Notice of Appeal filed by Chad Cunningham (Payment made via Pay.gov)(Juarez, Santiago) (Entered: 05/19/2011) |
| 05/19/2011 | <u>37</u> | AMENDED NOTICE OF APPEAL as to <u>35</u> Order on Motion to Dismiss, <u>34</u> Memorandum Opinion by Chad Cunningham. (Juarez, Santiago) (Entered: 05/19/2011) |
| 05/19/2011 | <u>38</u> | Transmission of Preliminary Record for Notice of Appeal and Amended Notice of Appeal to US Court of Appeals re <u>36</u> <u>37</u> (pg) (Entered: 05/19/2011) |
| 05/20/2011 | <u>39</u> | USCA Case Received Number 11−2103 for <u>36</u> Notice of Appeal filed by Chad Cunningham, <u>37</u> (pg) (Entered: 05/20/2011) |
| 06/13/2011 | <u>40</u> | TRANSCRIPT ORDER FORM filed by appellant indicating that a transcript is not necessary to be ordered for the notice of appeal. (pg) (Entered: 06/13/2011) |
| 06/13/2011 | <u>41</u> | LETTER to USCA re <u>36</u> briefing schedule for Notice of Appeal <u>37</u> (pg) (Entered: 06/13/2011) |

**ATTACHMENT 2: MEMORANDUM OPINION BY THE HONORABLE BRUCE BLACK GRANTING DEFENDANT-APPELLEES' MOTIONS TO DISMISS**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

_____

**CHAD CUNNINGHAM**,

        Plaintiff,

v.                                  No. CIV 10-451 BB/RLP

**UNIVERSITY OF NEW MEXICO
BOARD OF REGENTS,** *et al.*,

        Defendants.

### MEMORANDUM OPINION

This matter is before the Court for consideration of Defendants University of New Mexico Board of Regents and University of New Mexico School of Medicine's ("UNM Defendants") motion to dismiss (Doc. 9) and Defendant National Board of Medical Examiners' ("NBME") motion to dismiss (Doc. 16). After considering all submissions of the parties and the applicable law, the Court will *GRANT* the motions.

**Background**

According to his complaint, Plaintiff "has suffered from a reading disability since elementary school, where he suffered from severe headaches and other problems after prolonged reading." Am. Compl., ¶ 10. Medical examinations administered during his childhood showed "no physical problems" with his eyes. *Id.* He learned to compensate for the difficulty in reading and was "a superior student in grade school, high school and college." *Id.* "During his entire academic career the Plaintiff was able to complete assignments requiring extensive reading with difficulty but *without accommodation*..." *Id.*, ¶ 21 (emphasis added).

In 2005, Plaintiff began medical school at UNM.  Before completing the first year, he "suffered from constant and severe headaches and dangerously high blood pressure caused by the demands of reading."  *Id*., ¶ 15.  As a result, he took a medical leave from school.  *Id.*  He then underwent medical evaluation and treatment, through which he learned that he has Scoptic Sensitivity Syndrome ("SSS").  *Id*., ¶ 16.   SSS is a condition caused by hypersensitive photoreceptors in the eyes; it is sometimes categorized as a form of dyslexia.  *Id.*  Plaintiff returned to UNM in 2007, where he learned that he had to repeat the first year of courses.  *Id*., ¶ 18.  He "requested accommodation for his disability from Defendant UNM and was refused." *Id*., ¶ 19.

"Plaintiff resumed his studies, using prescribed colored glasses to assist him in reading and prescription medicines to control his blood pressure."  *Id*., ¶ 22. He completed the first two years of medical school courses and passed the examinations.  *Id*., ¶ 23.   Then, he prepared to take the United States Medical Licensing Examination[1] ("MLE").  *Id.*

Plaintiff took Step 1 of the MLE without any accommodations, but he did not pass.  *Id*., ¶ 26.  He applied for a retesting of Step 1 and formally requested accommodation for his SSS condition from Defendant NBME.  *Id*., ¶ 28.  In his request, he included evaluations from a physician and a psychologist that described his condition and the accommodations that would help him.  *Id*., ¶ 29.  Defendant NBME did not immediately grant the request for accommodation; instead, it asked for further evidence of Plaintiff's SSS condition, including school records, standardized test scores, and other records that documented his condition.  *Id*., ¶¶ 30-31. Plaintiff then petitioned Defendant UNM for assistance in obtaining an accommodation

---

[1] The MLE is a three-step examination process for medical students given by Defendant NBME.  Students must complete all steps of the MLE to remain in school, graduate, and become licensed to practice medicine in New Mexico.  Am. Compl., ¶ 25.

from Defendant NBME. *Id.*, ¶ 36. The Disability Committee of UNM did not assist Plaintiff in

obtaining an accommodation for his second attempt at the MLE. *Id.*, ¶ 37.

Plaintiff did not submit any other documentation to Defendant NBME, and he retook Step

1 of the MLE without any accommodation. *Id.*, ¶ 32. He then failed the examination for the

second time. *Id.*, ¶ 33. Pursuant to medical school rules, Plaintiff was placed on academic leave

until he passed Step 1 of the MLE. *Id.*, ¶ 40. Plaintiff then filed suit in this Court, alleging

violations of 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), the Rehabilitation

Act of 1973, and breach of contract.

### Standard of Review

In deciding a motion to dismiss, the Court must accept all well-pleaded allegations of the

complaint as true and must construe them in the light most favorable to the plaintiff. *See Pace v.

Swerdlow*, 519 F.3d 1067, 1073 (10th Cir. 2008). The Court looks to the specific allegations in

the complaint to determine whether they plausibly support a legal claim for relief. *See id.* A

plaintiff does not have to provide detailed facts, but the complaint must be "more than an

unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937,

1949 (2009). The court is "not bound to accept as true a legal conclusion couched as a factual

allegation." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007).

### Jurisdiction

I. Eleventh Amendment Immunity–UNM Defendants

UNM Defendants claim that they are entitled to state sovereign immunity pursuant to the

Eleventh Amendment to the U.S. Constitution. UNM Defs.' Mot. to Dismiss, p.6. State

sovereign immunity from suit is a jurisdictional inquiry, and it must be resolved before

proceeding to the merits of a case. *Brockman v. Wyoming Dept. of Family Services,* 342 F.3d

1159, 1163 (10th Cir. 2003) (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 93-94 (1998).

It is well established that "[UNM School of Medicine], its Regents, and the Committee on Admissions are 'arms of the state,' entitled to Eleventh Amendment immunity." *Buchwald v. Univ. of New Mexico Sch. of Med.*, 159 F.3d 487, 494 n.3 (10th Cir. 1998).  However, there are two exceptions to a state's Eleventh Amendment immunity from suit in federal court: "(1) if Congress abrogates the state's immunity in the exercise of its power of enforcement under § 5 of the Fourteenth Amendment; or (2) if the state voluntarily waives its immunity." *Ward v. Presbyterian Healthcare Services*, 72 F.Supp.2d 1285, 1290 (D.N.M. 1999) (internal citations and quotations omitted).

A. Waiver

New Mexico has not waived its immunity; on the contrary, state statutes such as the New Mexico Tort Claims Act ("NMTCA") contain express statements that it does not consent to federal jurisdiction.  *Ward,* 72 F.Supp.2d at 1293.  Plaintiff has not provided, and the court has not found, any evidence that New Mexico has waived its immunity under the laws cited in this case.  Thus, the second exception to Eleventh Amendment state immunity does not apply here.

B. Abrogation

In order to determine whether Congress intended to abrogate state sovereign immunity, courts must answer two questions: "first, whether Congress has unequivocally expressed its intent to abrogate the immunity, and second, whether Congress has acted pursuant to a valid exercise of power." *Florida Prepaid Postsecondary Educ. Expense Bd. v. College Savings Bank*, 527 U.S. 627, 635 (1999) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55 (1996)) (internal quotations omitted).

4

The Supreme Court has determined that Congress did *not* intend to abrogate state immunity by passing 42 U.S.C. § 1983. *Quern v. Jordan*, 440 U.S. 332, 341 (1979). Plaintiff concedes that the Eleventh Amendment forecloses his 42 U.S.C. § 1983 claims for money damages, but he argues that he may proceed with his claims for prospective relief under the *Ex Parte Young* exception to state immunity. However, the Tenth Circuit has determined that the *Ex Parte Young* exception does not apply to state agencies. *Buchwald,* 159 F.3d at 495. Since the UNM Defendants are state agencies, their Eleventh Amendment immunity is not precluded by *Ex Parte Young*. *See id.* The Court does not have jurisdiction over Plaintiff's 42 U.S.C. § 1983 claims, so those will be dismissed pursuant to Fed. R. Civ. Pro. 12(b)(1).

In contrast to 42 U.S.C. § 1983, Congress *did* validly abrogate state immunity by passing Title II of the ADA "insofar as Title II creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment." *U.S. v. Georgia*, 546 U.S. 151, 159 (2006). It also amended the Rehabilitation Act of 1973 to validly abrogate immunity when a state accepts federal funds under the Act. *Brockman*, 342 F.3d at 1167; 42 U.S.C. § 2000d-7(a)(1).

It is not clear from the complaint whether Plaintiff alleges that New Mexico receives federal funds under the Rehabilitation Act. UNM Defendants do not deny that New Mexico has accepted funds under the Rehabilitation Act, nor do they raise any other arguments as to lack of jurisdiction over Plaintiff's Rehabilitation Act claims. The Court has not found any evidence that New Mexico does not receive funds under the Act, or any other reason why the Act would not apply to UNM Defendants in this case. Thus, the Court has jurisdiction over Plaintiff's Rehabilitation Act claims pursuant to 42 U.S.C. § 1331.

Jurisdiction over Plaintiff's ADA claims is not so easily resolved. Plaintiff vaguely refers to "due process" violations in his complaint, but he does not specifically allege a violation of the Fourteenth Amendment. What's more, Title II of the ADA does not abrogate state immunity in every instance of an alleged Fourteenth Amendment violation. *Tennessee v. Lane*, 541 U.S. 509, 531 (2004) (observing that Title II abrogation is limited).

In *Lane*, the plaintiff's ADA claims concerned access to courts and judicial services. Here, Plaintiff's claims center around his medical school education and testing. Unlike access to courts, education is not a fundamental right under the U.S. Constitution. *See San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35-37 (1973). Other district courts have declined to extend Title II abrogation to cases involving, as this one does, higher education. *See, e.g., Doe v. Board of Trustees*, 429 F.Supp.2d 930, 939 (N.D.Ill. 2006). However, the First, Third, Fourth, and Eleventh Circuits interpreted *Lane* to apply to cases involving disability discrimination in a variety of contexts and *did* extend Title II abrogation to suits concerning disability discrimination in higher education. *Toledo v. Sanchez,* 454 F.3d 24, 40 (1st Cir. 2006); *Bowers v. National Collegiate Athletic Ass'n,* 475 F.3d 524, 550-53 (3rd Cir. 2007); *Constantine v. Rectors and Visitors of George Mason University*, 411 F.3d 474, 490 (4th Cir. 2005); *Assoc. for Disabled Americans v. Fla. Int'l Univ*., 405 F.3d 954 (11th Cir. 2005); *see also* Diane Heckman, "The Impact of the Eleventh Amendment on the Civil Rights of Disabled Educational Employees, Students and Student-Athletes," 227 Ed. L. Rep. 19, 39 (Feb. 7, 2008) ("the majority position is that public universities may be sued"). The Court will follow the precedent of those Circuits.

"Title II [of the ADA] provides that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such

entity.'" *Constantine*, 411 F.3d at 487 (quoting 42 U.S.C. § 12132).  Congress intended this

protection against disability discrimination to apply to a variety of public services, including

education.  *Id.*; 42 U.S.C. § 12101(a)(3).  While it is true that *Lane* concerned the fundamental

right of access to courts, nowhere in that opinion does the Supreme Court state that Title II

abrogation should be limited to cases involving fundamental rights.  *See Lane,* 541 U.S. 509.

Rather, the Court observed that Congress' use of  "prophylactic power" was appropriate "given

the sheer volume of evidence demonstrating the nature and extent of unconstitutional

discrimination against persons with disabilities in the provision of public services."  *Id.* at 528.

    "Considering the pattern of unconstitutional disability discrimination described by the

Court in *Lane*, [this Court] cannot say that Title II is 'so out of proportion to a supposed remedial

or preventive object that it cannot be understood as responsive to, or designed to prevent,

unconstitutional behavior.'" *Constantine*, 411 F.3d at 490 (quoting  *City of Boerne v. Flores*, 521

U.S. 507, 518 (1997)).  Indeed, Title II requires only "reasonable modifications that would not

fundamentally alter the nature of the service provided," and so it is self-limiting. *Assoc. for*

*Disabled Americans,* 405 F.3d at 959 (quoting *Lane,* 541 U.S. at 531).  With such intrinsic limits

in place, Title II is a proportional response to disability discrimination the Supreme Court has

found to be extensive in the area of public services.  *Lane,* 541 U.S. 509; *see also Assoc. for*

*Disabled Americans,* 405 F.3d at 959.

    Moreover, the parties do not dispute that Congress properly abrogated state immunity

through the Rehabilitation Act of 1973, which is substantially similar to the ADA.  Through

comparison, it would seem that if one of the statutes properly abrogated state immunity, then the

other would as well.  The Court has sufficient legal basis to find that Title II of the ADA is a

valid abrogation of states' Eleventh Amendment immunity.  *See Toledo,* 454 F.3d at 40; *Bowers,*

475 at 550-53; *Constantine*, 411 F.3d at 490; *Assoc. for Disabled Americans,* 405 F.3d at 959.

Thus, the Court has subject matter jurisdiction over Plaintiff's ADA and Rehabilitation Act

claims against UNM Defendants.

II. Ripeness–Defendant NBME

Defendant NBME argues that Plaintiff's claims against it are not ripe for adjudication.

Def. NBME's Mot. to Dismiss, p. 9.  Like state sovereign immunity, ripeness is a threshold

jurisdictional question that courts must resolve before proceeding to the merits of a case.  *U.S. v.*

*Wayne*, 591 F.3d 1326, 1329 n.1 (10th Cir. 2010).

Defendant NBME argues that Plaintiff's discrimination claims against it are not ripe,

because it has not yet denied Plaintiff's request for disability accommodations.  Def. NBME's

Mot. to Dismiss, p. 9.  However, Plaintiff explicitly alleges in his complaint that Defendant

NBME denied his request for an accommodation.  Am. Compl., ¶ 30.  Plaintiff also alleges that

Defendant NBME has violated the ADA and Rehabilitation Act by "imposing unreasonable and

burdensome conditions on the Plaintiff's application for accommodation."  *Id.*, ¶ 30.  Defendant

NBME admits that it requested additional information from Plaintiff after reviewing the initial

request.  Def. NBME's Mot. to Dismiss, p. 5.  Thus, whether or not Defendant NBME denied

Plaintiff's original request, Plaintiff's discrimination claims are still ripe for adjudication,

because the issue of imposing an undue burden on the accommodation process creates a live

issue.

**Discussion**

I. ADA and Rehabilitation Act claims

Plaintiff alleges that Defendant UNM "wrongfully and without sufficient or good cause

denied the Plaintiff his right to apply for and obtain reasonable accommodation for his disability

as provided by the [ADA] and the Rehabilitation Act of 1973." Am. Compl., ¶ 48.   He also

alleges that Defendant NBME violated the same laws by failing to provide him an

accommodation when taking the MLE.  *Id*., ¶ 30.   The ADA and Rehabilitation Act prevent

discrimination by public entities (ADA) and recipients of federal funding (Rehabilitation Act) on

the basis of disability.  42 U.S.C.A. §§ 12101-12213; 29 U.S.C.A. § 794.

"According to Title II of the ADA, 'no qualified individual with a disability shall, by

reason of such disability, be excluded from participation in or be denied the benefits of the

services, programs, or activities of a public entity, or be subjected to discrimination by any such

entity.'"  *McGuinness v. Univ. of New Mexico Sch. of Med.*, 170 F.3d 974, 978 (10th Cir. 1998)

(quoting  42 U.S.C. § 12131(2)).   "The term 'disability' means 'a physical or mental impairment

that substantially limits one or more of the major life activities' of the individual."  *Id*. (quoting

42 U.S.C. § 12102(2)(A)).   Reading, among others tasks, is defined as a "major life activity"

under the ADA[2].  42 U.S.C.A. § 12102(2)(A).

"The first element of a discrimination claim under the ADA is proof that the plaintiff has

a qualifying 'disability' under the statute."  *Kellogg v. Energy Safety Services Inc*., 544 F.3d

1121, 1124 (10th Cir. 2008).  As in the ADA, the first element of a prima facie Rehabilitation

Act claim is "that the plaintiff is disabled under the Act."  *McGeshick v. Principi*, 357 F.3d 1146,

1150 (10th Cir. 2004).  Courts evaluate Rehabilitation Act claims using the same standards as

they use to evaluate ADA claims.  *See*, *e.g*., *McGeshick*, 357 F.3d at 1150.

In this case, Plaintiff has not plead that he is "disabled" as that term is defined by the

ADA and the Rehabilitation Act.  Plaintiff has not alleged that his SSS condition substantially

---

[2] Plaintiff did not specify which activity he considered the impaired "major life activity"
for purposes of his ADA claims.  However, the entire suit arises from Plaintiff's difficulties
associated with reading, and he refers to no other "major life activity."

limits reading or any other life activity; rather, he writes that "during his entire academic career
[he] was able to complete assignments requiring extensive reading with difficulty but *without
accommodation*."  Am. Compl., ¶ 21 (emphasis added).  He also notes that he "was a superior
student in grade school, high school and college."  *Id*., ¶ 12.  Finally, he admits that he is able to
compensate for the effects of SSS by "using prescribed colored glasses to assist him in reading
and prescription medicines to control his blood pressure."  *Id*. ¶ 22.

Courts "must consider the plaintiff's ability to mitigate his impairment in determining if
that impairment substantially limits a major life activity" as required by the ADA and the
Rehabilitation Act.  *McGuinness,* 170 F.3d at 978.  Here, Plaintiff explicitly states that he is able
to mitigate the effects of SSS and has been successful doing so.  Am. Compl., ¶¶ 12, 22.  He also
writes that he has been successful during his entire academic career, despite his SSS condition.
Thus, Plaintiff has failed to substantiate the first element of prima facie ADA and Rehabilitation
Act claims by showing he is "disabled" as defined by the Acts.  Plaintiff has failed to state a
claim under the ADA or Rehabilitation Act, so the Court will dismiss those claims pursuant to
Fed. R. Civ. Pro. 12(b)(6).

II.  Breach of Contract claims

Plaintiff's only remaining claims against Defendants are for breach of contract.  Breach of
contract is a state law claim.  *See, e.g., Madsen v. Prudential Federal Sav. & Loan Ass'n*, 635
F.2d 797, 802 (10th Cir. 1980) ("the interpretation and enforcement of contracts are traditionally
within the province of state courts").  Federal courts do not have independent jurisdiction over
state law claims, unless such claims "turn on substantial questions of federal law."  *Grable &
Sons Metal Products, Inc. v. Darue*, 545 U.S. 308, 312 (2005).

Unlike *Grable*, where the state-law claim at issue turned on federal law regarding IRS short sales, Plaintiff's breach of contract claims do not turn on federal law. Plaintiff alleges that Defendant UNM breached "its duty of good faith and fair dealing by wrongfully and arbitrarily failing to assist the Plaintiff with his disability." Am. Compl., ¶ 54. He also alleged that Defendant NBME violated its contract with him by failing to provide testing accommodations. Am. Compl., ¶ 62. However, according to the facts in his complaint, Plaintiff is not entitled to relief under federal disability law. Plaintiff is not "disabled" as defined by the ADA and Rehabilitation Act. If Plaintiff is entitled to accommodations for his SSS condition, such entitlement does not arise from federal law. Moreover, the contract covenants of good faith and fair dealing, as well as third party beneficiaries, are defined by state, not federal, law. *See Corneveaux v. CUNA Mut. Ins. Group*, 76 F.3d 1498, 1506 (10th Cir. 1996) (holding that federal courts in the Tenth Circuit apply state law to interpret contractual obligations). Therefore, the Court only has supplemental, rather than original, subject matter jurisdiction over Plaintiff's state-law claims for breach of contract.

Federal supplemental subject matter jurisdiction over state law claims "is extended at the discretion of the court and is not a plaintiff's right." *TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1028 (10th Cir. 1992) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). "[A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). In the interest of comity and federalism, district courts are advised against making "needless decisions of state law." *TV Commc'ns Network, Inc.* 964 F.2d at 1028. If federal

11

claims are dismissed before trial, leaving only issues of state law, the federal district court should

decline to exercise supplemental jurisdiction by dismissing the case without prejudice. *Brooks v.*

*Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010) (citing *Carnegie-Mellon Univ.,* 484 U.S. at 350).

The instant suit is not yet at trial, so issues of judicial economy and fairness are not

implicated here. *See, Carnegie-Mellon Univ.*, 484 U.S. at 350. Rather, the issues of comity and

federalism are at the forefront, because the Court would have to decide matters of state law if it

continued to exercise jurisdiction over Plaintiff's contract claims. *See McWilliams v. Jefferson*

*County*, 463 F.3d 1113, 1117 (10th Cir. 2006). "Notions of comity and federalism demand that a

state court try its own lawsuits, absent compelling reasons to the contrary." *Thatcher Enters. v.*

*Cache County Corp.*, 902 F.2d 1472, 1478 (10th Cir.1990). Though Plaintiff cited federal law as

part of his contract claim, he is not entitled to relief under the laws he cited. Any breach of

contract claim he may have against the Defendants could only arise, if at all, from state law.

Thus there is not a compelling reason to maintain jurisdiction over this suit, and the state law

claims would be better addressed in state court. *See, Gaenzle*, 614 F.3d at 1229; *TV Commc'ns*

*Network, Inc.* 964 F.2d at 1028; *Thatcher Enters.*, 902 F.2d at 1478. Plaintiff's claim for breach

of contract will be dismissed without prejudice for lack of subject matter jurisdiction.

**Conclusion**

UNM Defendants are immune from Plaintiff's 42 U.S.C. § 1983 claims against them, so

those claims will be dismissed pursuant to Fed. R. Civ. Pro. 12(b)(1) for lack of subject matter

jurisdiction. Plaintiff has failed to allege sufficient facts in his complaint to make a plausible

claim that he is "disabled" as defined by the ADA and Rehabilitation Act of 1973. Thus, he has

failed to state a claim under either statute. Those claims will be dismissed pursuant to Fed. R.

Civ. Pro. 12(b)(6). No federal law claims remain in this suit, so the Court will decline to extend

12

supplemental jurisdiction over Plaintiff's contract law claims.  Those claims will be dismissed

pursuant to Fed. R. Civ. Pro. 12(b)(1) for lack of subject matter jurisdiction.


Dated this 20th  day of April, 2011.


_____
BRUCE D. BLACK
United States District Judge

**ATTACHMENT 3: FINAL ORDER OF JUDGMENT OF THE DISTRICT COURT**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

_____

**CHAD CUNNINGHAM**,

      Plaintiff,

   v.                          No. CIV 10-451 BB/RLP

**UNIVERSITY OF NEW MEXICO**
**BOARD OF REGENTS,** *et al.*,

      Defendants.

## <u>O R D E R</u>

A memorandum opinion having been filed this day, the Court hereby GRANTS

Defendants' motions to dismiss (Doc. 9; Doc. 16).

Dated this 20th day of April, 2011.

_____
BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE