CASE NO. 11-2103

UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

| | | |
|---|---|---|
| **CHAD CUNNINGHAM,** | ) | |
| | ) | |
| **Plaintiff-Appellant,** | ) | |
| | ) | |
| **vs.** | ) | **District of New Mexico** |
| | ) | **No. CIV 10-054 BB/RLP** |
| **UNIVERSITY OF NEW** | ) | **Judge Bruce Black** |
| **MEXICO BOARD OF** | ) | |
| **REGENTS and** | ) | |
| **NATIONAL BOARD OF** | ) | |
| **MEDICAL EXAMINERS,** | ) | |
| | ) | |
| **Defendants-Appellees.** | ) | |

DEFENDANT-APPELLEE UNIVERSITY OF NEW MEXICO BOARD OF
REGENTS' ANSWER BRIEF

Alfred A. Park
Lawrence M. Marcus
Park & Anderson, L.L.C.
*Attorneys for the Defendant-Appellee*
*University of New Mexico Board of Regents*
707 Broadway Blvd., Ste. 202
Albuquerque, NM 87102

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

**ITEM**                                                                 **PAGE**

TABLE OF CONTENTS _____ ii

TABLE OF AUTHORITIES _____ iv

I.      RULE 31.3 CERTIFICATE OF COUNSEL _____ 1

II.     STATEMENT OF THE ISSUES _____ 2

III.    STATEMENT OF THE CASE _____ 2

IV.     STATEMENT OF FACTS _____ 4

V.      SUMMARY OF THE ARGUMENT _____ 8

VI.     ARGUMENT _____ 10

        A.      THE DISTRICT OF NEW MEXICO WAS CORRECT IN
        GRANTING   UNM'S   MOTION   TO   DISMISS   PLAINTIFF-
        APPELLANT'S CLAIM UNDER 42 U.S.C. § 1983_____   10

        B.      THE DISTRICT COURT WAS CORRECT IN GRANTING UNM'S
        MOTION TO DISMISS PLAINTIFF-APPELLANT'S CLAIMS UNDER
        THE   AMERICANS   WITH   DISABILITIES   ACT   AND   THE
        REHABILITATION ACT_____   12

                1.      Plaintiff does not have a Disability _____   14

                2.      UNM Did not Deny Plaintiff-Appellant the Benefits of its
                Programs, Services or Activities _____   33

                3.      UNM's Alleged Actions were not the Proximate Cause of
                Plainiff-Appellant's Alleged Damages _____   39

C.    THE DISTRICT OF NEW MEXICO WAS CORRECT IN DECLINING TO EXERCISE JURISDICTION OVER PLAINTIFF-APPELLANT'S BREACH OF CONTRACT CLAIM_____    43

VII.    CONCLUSION _____    46

STATEMENT OF WHY ORAL ARGUMENT IS NECESSARY_____    46

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS__    49

CERTIFICATE OF DIGITAL SUBMISSION_____    50

CERTIFICATE OF SERVICE _____    51

# TABLE OF AUTHORITIES

**Cases**

Allen v. Southcrest Hosp., 2011 WL 6394472 (10th Cir. Dec. 21, 2011)...............32

BD v. Debuono, 193 F.R.D. 117, 140 (S.D.N.Y. 2000)..........................................36

Bell v. Fur Breeders Agricultural Co-op,
348 F.3d 1224, 1230 (10th Cir. 2003) ....................................................................10

Bell Atlantic Corp. v. Twombly,
550 U.S. 544, 553-558 (2007)…………………………………………………….10

Bird v. Delacruz, 2005 WL 1625303 at *4 (S.D. Ohio 2005)................................36

Brooks v. Gaenzle, 614 F.3d 1213, 1229 (10th Cir. 2010)......................................45

Buchwald v. Univ. of N.M. Sch. Of Med., 159 F.3d 487, 495 (10th Cir. 1998)......12

Conn v. GATX Terminals Corp., 18 F.3d 417, 419 (7th Cir. 1994) ......................20

Conrad v. Bd. of Johnson County Com'rs,
237 F. Supp. 2d 1204, 1235-36 (D. Kan. 2002) ....................................................35

Cooper Technologies Co. v. Dudas,
85 U.S.P.Q.2d 14652007 WL 4233467 at *4 ........................................................25

Cummings v. Norton, 393 F.3d 1186, 1190 (10th Cir. 2005) ................................13

Dudnikov v. Chalk & Vermillion Fine Arts, Inc.,
514 F.3d 1063 (10th Cir. 2008)...............................................................................42

E.E.O.C. v. Wal-Mar Stores, Inc., 187 F.3d 1241 (10th Cir. 1999)........................35

Ex Parte Young, 209 U.S. 123 (1908) ............................................................ 11, 12

Farmers Ins. Co. v. Hubbard, 869 F.2d 565, 570 (10th Cir. 1989)...........................20

Gunson v. James, 364 F. Supp. 2d 455 (D.N.J. 2005)...............................................35

Jicarilla Apache Tribe v. Kelly, 129 F.3d 535, 538 (10th Cir. 1997)......................44

Klinger v. Director, Dept. of Revenue, State of Missouri,
455 F.3d 888, 895 (8th Cir. 2006). ..........................................................................11

Knapp v. Northwestern Univ., 101 F.3d 473 (7th Cir. 1996)...................................29

Lawson v. Plantation Gen. Hosp.,
704 F. Supp. 2d 1254, 1272 (S.D. Fla. 2010) ..........................................................21

McDonald v. Delta Air Lines, Inc., 94 F.3d 1437 (10th Cir. 1996). ......................16

McGuinness v. Univ. of N.M. Sch. Of Med.,
170 F.3d 974, 978 (10th Cir. 1998)……………...…...15,16,17,18, 19, 23, 24, 26,
28, 29, 30, 32, 36, 38, 39

Nielander v. Board of County Com's of County of Republic, Kan.,
582 F.3d 1155, 1172 (10th Cir. 2009) .....................................................................43

Pacella v. Tufts Univ. Sch. of Dental Med.,
66 F. Supp. 2d 234 (D. Mass. 1999) ........................................................ 17, 27, 29

Pennhurst State Sch. & Hosp. v. Halderman,
465 U.S. 89, 120-21 (1984) .....................................................................................43

Powell v. Nat. Bd. of Medical Examiners,
364 F.3d 79 (2d Cir. 2004)...................................................................... 36, 37, 38

Quern v. Jordan, 440 U.S. 332, 345, 99 S. Ct. 1139, 1147 (1979)..........................11

Regents of the Univ. of Mich. v. Ewing, 474 U.S. 214 (1985) ...............................37

Rhodes v. Langston University,
2011 WL 4867552  (10th Cir. Oct. 14, 2011)...........................................................21

Ruiz v. McDonnell, 299 F.3d 1173, 1180 (10th Cir. 2002) .....................................11

<u>Seeds v. Lucero</u>, 177 F. Supp. 2d 1261, 1273 (D.N.M. 2001) ...............................20

<u>Siemon v. AT&T Corp.</u>, 117 F.3d 1173, 1176 (10th Cir. 1997) ..........................165

<u>Sutton v. United Airlines, Inc.</u>, 527 U.S. 471(1999) ................................. 21, 22, 23

<u>Tarrant Regional Water Dist. v. Hermann</u>,
656 F.3d 1222, 1233 (10th Cir. 2011) ......................................................10

<u>Thompson v. Colorado</u>, 278 F.3d 1020, 1023 (10th Cir. 2001) ............................11

<u>Toyota Motor Manufacturing, Kentucky, Inc. v. Williams</u>,
534 U.S. 184 (2002)................................................................. 22, 23, 28, 29, 30, 31

<u>Trask v. Franco</u>, 446 F.3d 1036, 1046 (10th Cir. 2006) ........................................40

<u>U.S. ex rel Lemmon v. Envirocare of Utah</u>,
614 F.3d 1163, 1167 (10th Cir. 2010). ......................................................14

<u>Ward v. Presbyterian Health Services</u>,
72 F. Supp. 2d 1285, 1289-91 (D.N.M. 1999)................................................. 11, 44

<u>Welsh v. City of Tulsa</u>, 977 F.2d 1415, 1419 (10th Cir. 1992).............................16

<u>Williams v. Toyota Motor Mfg,, Kentucky</u>,
224 F.3d 840 (6th Cir. 2000)........................................................... 30, 31

<u>Young v. Dillon Cos.</u>, 468 F.3d 1243, 1253 (10th Cir. 2006)................................40

**Statutes**

28 U.S.C. § 1367 ....................................................................................................43

29 U.S.C. § 794......................................................................................................13

42 U.S.C. § 12101 ..................................................................................................12

42 U.S.C. § 12102 (4)(B)........................................................................................23

42 U.S.C. § 12102(3)(e)(ii) ........................................................................22

42 U.S.C. § 12102(4)(E)(i) .........................................................................22

42 U.S.C. § 12102(4)(E)(ii). ......................................................................24

42 U.S.C. § 12132 ......................................................................................13

42 U.S.C. § 1983 ..................................................... 2, 7, 8, 10, 11, 44, 46

42 U.S.C. §§ 1983 and 1985 ......................................................................45

42 U.S.C. 12102(4)(B) ...............................................................................29

ADA Amendments Act of 2008, P.L. 110-325, § 2 ..................................22

**Regulations**

28  C.F.R. § 35.130(b)(7)…...……………………………………………….34

29 C.F.R. § 1630.2(j)(ii) .............................................................................28

**COMES NOW** Defendant/Appellee University of New Mexico Board of Regents ("UNM")[1], by and through its counsel of record, Park & Anderson, L.L.C. (Alfred A. Park and Lawrence M. Marcus) and hereby files this Answer Brief pursuant to Fed. R. App. P. Rule 28.  For its Answer Brief, UNM **STATES**:

## I.  RULE 31.3 CERTIFICATE OF COUNSEL

Pursuant to Tenth Circuit Local Rule 31.3, Counsel for Appellee UNM certifies that a separate brief is necessary because UNM's arguments are substantially different from those raised by co-Defendant/Appellee National Board of Medical Examiners.  Moreover, UNM is an arm of the State of New Mexico, and is thus a government entity exempt from the single brief rule.  *See* Local Rule 31.3(D).

---

[1] In his Complaint, Plaintiff-Appellant listed the University of New Mexico School of Medicine as a separate Defendant.  However, he has stated no facts that would allege that the School of Medicine has a separate corporate identity.  Indeed, under New Mexico law, all of the management and control of the University of New Mexico, including the power to create and manage departments, and the capacity to sue or be sued, is vested in the Board of Regents.  N.M.S.A §§ 21-7-3, 21-7-4, 21-7-8.  In his Opening Brief, Plaintiff-Appellant argues that these statutes do not expressly forbid the School of Medicine from being a party to a lawsuit.  However, this is irrelevant:  under the Federal Rules of Civil Procedure, when a department, pursuant to state law, is under such exclusive control of a governmental entity, this department does not have the capacity to sue or be sued.  Fed. R. Civ. P. Rule 17; Davis v. City of Portsmouth, Va., 579 F. Supp. 1205, 1210 (E.D. Va. 1983).  Moreover, Plaintiff-Appellant did not list the School of Medicine as a party to this appeal.  However, if the School of Medicine is considered to be a proper party, all arguments made by UNM apply equally to the School of Medicine.

1

## II.   STATEMENT OF THE ISSUES

1.   Was the United States District Court for the District of New Mexico correct in granting UNM's Motion to Dismiss Plaintiff-Appellant's cause of action pursuant to 42 U.S.C. § 1983 due to lack of subject matter jurisdiction?

2.   Was the United States District Court for the District of New Mexico correct in granting UNM's Motion to Dismiss Plaintiff-Appellant's Americans with Disabilities Act and Rehabilitation Act causes of action for failure to state a claim upon which relief can be granted?

3.   Was the United States District Court for the District of New Mexico correct in declining to exercise jurisdiction over Plaintiff-Appellant's breach of contract cause of action?

## III.  STATEMENT OF THE CASE

This is an appeal from a decision of the United States District Court for the District of New Mexico dismissing Plaintiff-Appellant's case.  Plaintiff-Appellant has accused UNM and the National Board of Medical Examiners ("NBME") of failure to accommodate his Irlen's Syndrome in connection with the administration of the Step One portion of the United States Medical Licensing Examination by NBME.  Plaintiff brought four causes of action: a cause of action pursuant to 42 U.S.C. § 1983 for alleged denial of due process rights, a cause of action pursuant to

2

the Americans with Disabilities Act for alleged failure to accommodate, a cause of action pursuant to the Rehabilitation Act of 1973 for alleged failure to accommodate, and a state law claim for alleged breach of contract.

Both Defendants-Appellees moved to dismiss.  UNM moved to dismiss Plaintiff-Appellant's Section 1983 claim, his ADA claim, and his breach of contract claim pursuant to Fed. R. Civ. P. Rule 12 (b) (1) for lack of subject matter jurisdiction pursuant to the Eleventh Amendment to the United States Constitution. Moreover, UNM also moved to dismiss all of Plaintiff-Appellant's claims pursuant to Fed. R. Civ. P. Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  Essentially UNM argued that, assuming all of the well-pled facts of the case to be true, Plaintiff-Appellant was not disabled, UNM did not fail to provide required accommodations, and UNM's alleged actions were not the cause of Plaintiff-Appellant's alleged damages. The United States District Court correctly dismissed Plaintiff-Appellant's Complaint in its entirety.  The District Court held that it lacked subject matter jurisdiction over Plaintiff-Appellant's Section 1983 claim, as the Eleventh Amendment was not abrogated by Congress when it passed that statute.  The District Court held that it did have jurisdiction over Plaintiff-Appellant's ADA claim.  However, it dismissed both the ADA and Rehabilitation Act causes of action for failure to state a claim upon which relief could be granted. The District Court held that, even assuming all of the well-pled facts in Plaintiff-

Appellant's Complaint to be true, Plaintiff was not disabled.  Finally, the District Court declined to exercise supplemental jurisdiction over Plaintiff-Appellant's state law breach of contract claim, dismissing the latter claim without prejudice. Plaintiff-Appellant appealed the decision of the District Court.  However, as will be shown below, the district court's decision was correct, and should be affirmed.

## IV. STATEMENT OF FACTS

This matter is a direct appeal from the dismissal, pursuant to Fed. R. Civ. P. Rules 12(b)(1) & 12(b)(6) of Plaintiff-Appellant's case by the United States District Court for the District of New Mexico.  Accordingly, this appeal assumes all of the well-pled facts in Plaintiff-Appellant's Complaint to be true.  Taking these facts to be true, the relevant facts of the case are as follows:

Plaintiff-Appellant is a medical student at UNM, and brought the case as a consequence of his multiple failures of Step One of the United States Medical Licensing Examination ("USMLE").  Aplt. App. at 6-14. This test is administered by the National Board of Medical Examiners ("NBME"), an organization that is not affiliated with UNM. Aplt. App. at 7, ¶¶ 3-4; Aptl. App. at 10, ¶¶ 23-24. Most, if not all, medical students in the United States are required to take the Step One Examination after they have completed their second year of medical school, and passage of this examination is generally considered to be a requirement for advancement into the third year of medical school.  Aplt. App. at 10, ¶¶ 24-25.

Plaintiff-Appellant argues that his multiple failures of Step One of the USMLE resulted from UNM's alleged refusal to accommodate Plaintiff-Appellant's alleged condition of Irlen's syndrome, a vision disorder that allegedly caused Plaintiff-Appellant difficulty with long reading assignments.  As will be argued below, however, UNM was not required to accommodate Plaintiff-Appellant, and its alleged failure to accommodate Plaintiff-Appellant did not result in Plaintiff-Appellant's failure of the Step one examination.  Assuming all of the well-pled facts of Plaintiff's Complaint to be true, the relevant facts of the case are as follows:

Since he was a child, Plaintiff-Appellant suffered from headaches when he read for long periods of time.  Aplt. App. at 8, ¶10.  These headaches were apparently caused by Irlen's Syndrome, which was not diagnosed until after Plaintiff-Appellant enrolled in medical school.  Aplt. App. at 9, ¶¶ 15-17. Nevertheless, the Irlen's syndrome did not substantially limit his ability to read and to learn.  Indeed, Plaintiff-Appellant excelled in high school and college, showing particular proficiency in science and math.  Aplt. App. at 8, ¶ 12. Plaintiff-Appellant successfully took the MCAT, and enrolled in UNM's Medical School in 2006, after completing his course of study in high school and college. Aplt. App. at 8-9, ¶¶ 13-15.

However, shortly after Plaintiff-Appellant enrolled in medical school,   the intense study inherent in a medical school program caused his headaches to worsen.  Aplt. App. at 9, ¶ 15.  Plaintiff-Appellant then took a leave of absence from medical school.  Id.  At this time, he was diagnosed with Irlen's syndrome.  Aplt. App. at 9, ¶¶ 16-17.  Plaintiff-Appellant discovered that he could compensate for his Irlen's Syndrome by the use of colored eyeglasses.  Aplt. App. at 10, ¶ 22.  Thus, he was able to return to medical school. Aplt. App.  at 9, ¶ 18.  Upon his return to medical school, he requested unspecified accommodations from UNM.  Aplt. App. at 9, ¶ 19. UNM denied this request; nonetheless, Plaintiff was able to pass his first two years of medical school without accommodation.  Aplt. App. at 10, ¶ 23.

Plaintiff then took the USMLE Step One, and failed the exam. Aplt. App. at 11, ¶ 26.   He then requested accommodation for his Irlen's Syndrome from NBME.  Aplt. App. at 11, ¶ 28.  However, this request for accommodation was initially turned down by NBME on the grounds that Plaintiff-Appellant had never required accommodation at any time in his previous education, and that he did not submit records of his disorder to NBME.  Aplt. App. at 11-12, ¶¶ 30-31.   NBME informed Plaintiff-Appellant that if he wanted to continue to seek accommodation, he would be required to submit his medical and school records dating back to elementary school.  Aplt. App. at 12, ¶ 31.  Plaintiff-Appellant believed that he

would not have time to gather this information.  Aplt. App. at 12, ¶ 32.  Therefore, Plaintiff-Appellant attempted to circumvent the requirement by again requesting that UNM accommodate his disability, and that UNM assist Plaintiff-Appellant with obtaining accommodation from NBME.  Aplt. App. at 12-13, ¶ 36.  Because Plaintiff-Appellant had passed his first two years without accommodation, he clearly did not need accommodations from UNM.  Accordingly, UNM reasonably denied Plaintiff's request. Aplt. App. at 13, ¶ 37.  Because Plaintiff-Appellant did not provide NBME with his records, NBME denied his request for accommodation, and Plaintiff again failed the exam. Aplt. App. at 12, ¶¶ 32-33.

Plaintiff-Appellant then brought the present claim against UNM and NBME for alleged violation of his right to due process under 42 U.S.C. § 1983, violation of the Americans with Disabilities Act (ADA) and the Rehabilitation Act, and breach of contract. UNM moved to dismiss all of the causes of action.  Aplt. App. at 44-69.  The U.S. District Court for the District of New Mexico dismissed the due process, ADA and Rehabilitation Act claims with prejudice.  Aplt. App. at 227-236.  The District Court declined to exercise supplemental jurisdiction over the breach of contract claim, so it dismissed that claim without prejudice.  Aplt. App. at 236-238.  Plaintiff-Appellant brought the present appeal to this Court. However, as will be shown below, the District Court decision was correct, and thus should be affirmed.

## V.  SUMMARY OF THE ARGUMENT

The District Court properly dismissed Plaintiff-Appellant's Complaint in its entirety.  The Eleventh Amendment forecloses the possibility of federal jurisdiction over Plaintiff's claim under 42 U.S.C. § 1983.  The fact that Plaintiff-Appellant seeks injunctive relief under this statute is irrelevant because he sued an "arm of the state," rather than a state official.

Moreover, Plaintiff-Appellant's Complaint did not state a claim under either the ADA or the Rehabilitation Act .  Plaintiff-Appellant does not fit the definition of "disabled" in these acts because he is not substantially impaired in a major life activity.  Plaintiff-Appellant had been very successful in school prior to his enrollment at UNM medical school, so his Irlen's Syndrome did not substantially limit his major life activities of learning and reading.

Moreover, the ADA Amendments Act does not change this lack of disability.  Plaintiff-Appellant claims that the ADA Amendments Act, which relaxed the standards for determining whether a person has a disability, supersedes the case law on which the District Court relied.  However, this argument lacks merit for three reasons.  First, Plaintiff-Appellant did not mention the ADA Amendments Act at the District Court level, so he failed to preserve the issue.

Second, the only relevant denial of accommodation occurred in 2007, prior to the effective date of the ADA Amendments Act. Third, Plaintiff-Appellant is not disabled, even under the more relaxed standards of the ADA Amendments Act. Plaintiff was able to pass medical school classes with the use of a type of eyeglasses. While the ADA Amendments Act generally requires that the ability to mitigate impairments not be considered in a determination of disability, the Act specifically states that eyeglasses are an exception to this rule: the ability to mitigate using eyeglasses is to be considered in a determination of disability. Moreover, the ADA Amendments Act was enacted to ensure that persons with very severe impairments are protected by the ADA. Plaintiff-Appellant does not have such severe impairments.

Moreover, even assuming, *ad arguendo*, that Plaintiff-Appellant was considered "disabled," he still has not stated a claim under either the ADA or the Rehabilitation Act. Plaintiff-Appellant was not denied the benefits of UNM's medical school program, as he needed no accommodation to pass his medical school classes. If Plaintiff-Appellant needed accommodation to pass the USMLE Step One examination, that examination was administered by NBME, not by UNM. Accordingly, it was not UNM's responsibility. Certainly UNM also was not required, as a reasonable accommodation, to allow Plaintiff-Appellant to enter the third year of medical school without passing the Step One examination.

Finally, UNM's alleged actions were not the proximate cause of Plaintiff-Appellant's alleged damages, as NBME denied Plaintiff-Appellant accommodation for failure to submit required paperwork, not because of UNM's alleged actions.

Finally, the District Court was correct in declining to exercise supplemental jurisdiction over Plaintiff-Appellant's state law breach of contract claim, and in dismissing the claim without prejudice. The District Court had dismissed all of Plaintiff-Appellant's federal claims, so the Court's action regarding the state law claim was a valid exercise of discretion.

## VI.  ARGUMENT

### A.  THE DISTRICT OF NEW MEXICO WAS CORRECT IN GRANTING UNM'S MOTION TO DISMISS PLAINTIFF-APPELLANT'S CLAIM UNDER 42 U.S.C. § 1983

In its Motion, UNM moved, pursuant to Fed. R. Civ. P. Rule 12(b)(1), to dismiss Plaintiff-Appellant's claim under 42 U.S.C. § 1983 on the grounds that UNM, as a state agency, is immune from suit under 42 U.S.C. § 1983 on Eleventh Amendment grounds.  Aplt. App. at 49-54.  The New Mexico District Court correctly dismissed the claim on those grounds.  Aplt. App. at 229-231. Indeed, district court determinations regarding subject matter jurisdiction are subject to de novo review.  Tarrant Regional Water Dist. v. Hermann, 656 F.3d 1222, 1233 (10th Cir. 2011).  However, the law is well-established: the District Court did not have

subject matter jurisdiction to consider Plaintiff-Appellant's claim under 42 U.S.C. § 1983.

The Eleventh Amendment bars suits against state agencies in federal court except where the state has waived that immunity, or Congress has abrogated that immunity under its powers pursuant to the Fourteenth Amendment.    Ward v. Presbyterian Health Services, 72 F. Supp. 2d 1285, 1289-91 (D.N.M. 1999).  This Court has held that the Eleventh Amendment divests a federal court of jurisdiction over lawsuits in which a state entity is sued.  Ruiz v. McDonnell, 299 F.3d 1173, 1180 (10th Cir. 2002); Thompson v. Colorado, 278 F.3d 1020, 1023 (10th Cir. 2001), overruling on other grounds recognized by Klinger v. Director, Dept. of Revenue, State of Missouri, 455 F.3d 888, 895 (8th Cir. 2006).

In the present case, it is clear that the State of New Mexico has not waived its Eleventh Amendment immunity, and Congress did not abrogate such immunity when it passed 42 U.S.C. § 1983.  Ward,  72 F. Supp. 2d at 1293; Quern v. Jordan, 440 U.S. 332, 345, 99 S. Ct. 1139, 1147 (1979).  Accordingly, the District Court correctly dismissed Plaintiff-Appellant's claim under that statute.  Significantly, Plaintiff-Appellant does not deny that the Eleventh Amendment forecloses his claim for damages.  Rather, Plaintiff-Appellant claims that his claim under 42 U.S.C. § 1983 is purely for injunctive relief, so the Ex Parte Young, 209 U.S. 123

11

(1908) doctrine allows him to assert such a claim. However, it is well settled that this argument is incorrect.

The <u>Ex Parte Young</u> doctrine does allow a claim for injunctive relief against a state official in his official capacity. However, this exception is limited to suits against officials. Suits against state agencies are always barred by the Eleventh Amendment, no matter what type of relief is sought against the agency. <u>Buchwald v. Univ. of N.M. Sch. Of Med.</u>, 159 F.3d 487, 495 (10th Cir. 1998); <u>Puerto Rico Aqueduct and Sewer Auth.</u>, 506 U.S. 139, 146 (1993). In the present case, Plaintiff did not bring a claim against any state official; his claim is limited to a suit against UNM, which is a state agency. <u>Buchwald</u>, 159 F.3d at 496. Accordingly, the district court correctly held that it lacked jurisdiction to consider Plaintiff-Appellant's claim under 42 U.S.C. §1983, and correctly dismissed the claim.

## B.  THE DISTRICT COURT WAS CORRECT IN GRANTING UNM'S MOTION TO DISMISS PLAINTIFF-APPELLANT'S CLAIMS UNDER THE AMERICANS WITH DISABILITIES ACT AND THE REHABILITATION ACT

The District Court also correctly dismissed both Plaintiff's claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq* and the Rehabilitation Act of 1973. UNM moved to dismiss these claims pursuant to Fed. R. Civ. P. Rule 12(b)(6), as even assuming all of Plaintiff-Appellee's well-pleaded claims to be true, Plaintiff-Appellee failed to state claims upon which relief can be

granted. The ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Rehabilitation Act contains substantially the same language regarding programs that receive federal funding. 29 U.S.C. § 794. The analysis of a claim under the Rehabilitation Act is substantially identical to that filed under the ADA. "Because the language of disability used in the ADA mirrors that in the Rehabilitation Act, we look to cases construing the Rehabilitation Act for guidance when faced with an ADA challenge and vice versa." <u>Cummings v. Norton</u>, 393 F.3d 1186, 1190 (10th Cir. 2005).

UNM moved to dismiss the claims on the grounds that Plaintiff fails to state a claim under either of these Acts because he does not suffer from a disability, UNM did not deny him the benefits of their program, and because UNM's alleged actions were not the proximate cause of his alleged injury. Aplt. App. at 60-67. The New Mexico District Court held that Plaintiff-Appellant was not considered disabled, and dismissed Plaintiff-Appellee's claims under both the ADA and Rehabilitation Act. Aplt. App. at 234-236. The District Court did not reach UNM's other arguments on the issue.

The District Court's determination that Plaintiff-Appellant failed to state a claim upon which relief can be granted was correct. Review of this issue is *de*

13

*novo*.  <u>U.S. ex rel Lemmon v. Envirocare of Utah</u>, 614 F.3d 1163, 1167 (10th Cir. 2010).   However, as with the District Court's holding that it does not have jurisdiction over Plaintiff-Appellant's Section 1983 cause of action, the law is well-settled that Plaintiff-Appellant failed to state a claim under either the ADA or the Rehabilitation Act.

The District Court properly dismissed Plaintiff-Appellee's claims under the ADA and the Rehabilitation Act.   Indeed, assuming all of the facts of the Complaint to be true, Plaintiff-Appellant is not considered disabled.   Moreover, even assuming, *ad arguendo*, that Plaintiff-Appellant is considered to be disabled, UNM did not deny Plaintiff-Appellant the benefits of its services, programs, and activities, and thus did not discriminate against Plaintiff-Appellant.   Further, UNM's alleged actions were not the proximate cause of Plaintiff-Appellant's alleged damages.  Accordingly, the District Court's decision should be upheld.

1.    <u>Plaintiff does not have a Disability</u>

Plaintiff fails to state a claim under the ADA or the Rehabilitation Act because he does not have a "disability" as defined in the statutes.   A disability is defined as:

> "(A)  a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment."

42 U.S.C. § 12102(1).

Plaintiff does not claim that he has a record of an impairment, nor that he was regarded as having an impairment. Plaintiff does claim that he suffers from an actual impairment. However, in order to state a claim upon which relief can be granted, he is required to state facts that, if true, would show that this impairment substantially limits one or more of his major life activities. To the contrary, taking all of Plaintiff's factual allegations as true, Plaintiff's Complaint demonstrates that he does *not* suffer from an impairment that significantly limits a major life activity.

Examples of major life activities, such as reading and learning, are included in the ADA, and the Tenth Circuit looks to the regulations promulgated under the ADA to construe the meaning of the statute. McGuinness v. Univ. of N.M. Sch. Of Med., 170 F.3d 974, 978 (10th Cir. 1998). The term "substantially limits" is not defined in the ADA, but federal courts have produced a substantial body of law regarding the ADA and its regulations in the employment context, in which they considered allegations that a plaintiff's condition substantially impaired his or her ability to work. McGuinness, 170 F.3d at 978. Moreover, when considering ADA cases in the realm of education, in which a plaintiff alleges that he has a condition that impairs his ability to read or learn, the Tenth Circuit generally draws analogies to the principles developed in ADA employment cases. Id.

Under the principles developed in employment cases, "an individual does not suffer from a disability under the ADA if his disability does not prevent him from performing a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." Siemon v. AT&T Corp., 117 F.3d 1173, 1176 (10th Cir. 1997).  Because a condition is only a disability in the context of employment if it prevents a person from performing a "broad class of jobs," it is not enough for a plaintiff to show that he had difficulty with one particular job or situation. For example, an airline mechanic whose impaired vision prevented him from taxiing aircraft was not "disabled" for the purposes of the Americans with Disabilities Act or the Rehabilitation Act.  McDonald v. Delta Air Lines, Inc., 94 F.3d 1437 (10th Cir. 1996).  Indeed, "it is the actual effect on the individual's life that is important under the ADA.  For the purposes of the ADA, inability to pursue one career, such as medicine, does not constitute a severe impact on an individual's life." McGuinness, 170 F.3d at 979, citing Welsh v. City of Tulsa, 977 F.2d 1415, 1419 (10th Cir. 1992).

Drawing an analogy to the educational context, it is thus clear that a condition that generally allows a person to study and learn is not a "disability," even if it creates some difficulty for the student.  The Tenth Circuit and other courts have held that this is indeed the case, even if the student needs to take steps

to mitigate the condition. For instance, in <u>McGuinness</u>, a case very similar to the one at bar, the plaintiff had been an otherwise successful student who suffered from anxiety in math and chemistry courses. 176 F.3d at 976. However, the plaintiff managed to overcome these difficulties, and earned a degree in physiological psychology. <u>Id.</u> He then enrolled in medical school, but failed to attain satisfactory grades in his first year. <u>Id.</u> at 977. This required him to repeat his first year's courses, so he sued the medical school under the ADA. <u>Id.</u> The Tenth Circuit upheld the decision granting summary judgment on his claim, stating that his condition was not so severe that it constituted a "disability." <u>Id.</u> at 979.

Moreover, the District of Massachusetts considered a case in which a university dental school dismissed a person for failing to perform at an acceptable academic level. <u>Pacella v. Tufts Univ. Sch. of Dental Med.</u>, 66 F. Supp. 2d 234 (D. Mass. 1999) The person in question suffered from a severe vision disorder that was, nevertheless, largely corrected by eyeglasses, leaving only some problems with fine print and depth perception. 66 F. Supp. 2d at 237. The <u>Pacella</u> court held that Plaintiff's vision problems did not constitute a disability, "even if [the plaintiff's] impediments substantially limited his ability to attend dental school, 'an impairment that interferes with an individual's ability to perform a particular function, but does not significantly decrease that individual's ability to obtain a

satisfactory education otherwise, does not substantially limit the major life activity of learning." Id. at 239.

In the present case, it is clear that Plaintiff does not suffer from a condition that substantially limits his major life activity of learning.  This case is very similar to McGuinness and Pacella.  Indeed, by his own admission, Plaintiff is even less impaired than were the plaintiffs in those cases.  Plaintiff had little difficulty in grade school, high school and college, performing very well in school, especially in the areas of math and science, without any mitigating factors.  Aplt. App. at 8, ¶ 12.  While Plaintiff finally had some trouble when he started medical school, he was able to overcome the problem using colored eyeglasses, and managed to pass the first two years of medical school. Aplt. App. at 10, ¶ 22-23.   Under the precedents set in Pacella and McGuinness, it is clear that, even if Plaintiff's condition substantially impaired his ability to attend medical school, which it did not, it would not be sufficient to constitute a disability.   Indeed, Plaintiff-Appellant's Complaint clearly stated that Plaintiff-Appellant's difficulties in medical school did not interfere with his ability to otherwise obtain a satisfactory education, and did not prevent him from working in a broad range of jobs.  He passed his classes for the first two years of medical school, and only alleged that he met difficulty with the specific conditions of the USMLE exam. Quite simply, this is not sufficient to demonstrate a limitation of a substantial life activity.  As a

18

consequence, the U.S. District Court for the District of New Mexico correctly determined that Plaintiff-Appellant was not disabled, and thus dismissed Plaintiff-Appellant's ADA and Rehabilitation Act causes of action.

Plaintiff-Appellant does not substantially disagree with this analysis. Rather, Plaintiff-Appellant rests his appeal on the fact that the District Court largely based its decision on the holding of <u>McGuinness</u>, and he claims that the present case can be distinguished from <u>McGuinness</u> on the grounds that <u>McGuinness</u> was an appeal from a summary judgment, whereas the present appeal concerns a motion to dismiss. Opening Brief at 30-31.  In addition, Plaintiff claims that <u>McGuinness</u> was decided before the ADA was amended in 2008 to expand the definition of disability.  <u>Id.</u>  However, as will be shown below, both of these arguments must fail.

While it is true that the instant case concerns a motion to dismiss, whereas <u>McGuinness</u> concerned a motion for summary judgment, this difference is irrelevant.  The important difference between the two types of motions is simple: "the court must consider the conduct alleged in the complaint in deciding a motion to dismiss, while it must look beyond the pleadings to the evidence before it when deciding a motion for summary judgment."  <u>Bell v. Fur Breeders Agricultural Co-op</u>, 348 F.3d 1224, 1230 (10th Cir. 2003). There is nothing special about ADA causes of action that prevents them from being dismissed pursuant to Rule

12(b)(6).  In order to dismiss Plaintiff-Appellant's case, the District Court did not need to look beyond the pleadings:  in his Complaint, Plaintiff-Appellant stated facts that, if assumed to be true, foreclose any possibility of a claim under the ADA or the Rehabilitation Act.  These facts include Plaintiff-Appellant's ability to succeed, and even excel, in college without any modifications, and his ability to pass his first two years of medical school without any assistance other than colored eyeglasses.  Quite simply, in his Complaint, Plaintiff-Appellant pled himself out of court. Seeds v. Lucero, 177 F. Supp. 2d 1261, 1273 (D.N.M. 2001), citing Conn v. GATX Terminals Corp., 18 F.3d 417, 419 (7th Cir. 1994).  Accordingly, in this case, a Motion to Dismiss pursuant to Rule 12(b)(6) is the proper means of disposing of Plaintiff's ADA and Rehabilitation Act claims, so the dismissal of these claims should be upheld.

Similarly, Plaintiff's argument regarding the ADA Amendments Act must also fail.  First, Plaintiff-Appellant never raised the issue of the ADA Amendments at the District Court.   As a general rule, Courts of Appeals do not consider issues not raised at the trial court level.  Farmers Ins. Co. v. Hubbard, 869 F.2d 565, 570 (10th Cir. 1989).  This rule has two very narrow exceptions: subject matter jurisdiction and sovereign immunity; neither of these exceptions are applicable to the issue of the effect of the ADA Amendments Act. Id.  Accordingly, this Court should not consider the issue of the ADA Amendments Act.

Secondly, the ADA Amendments Act is inapplicable to the present case. While Plaintiff-Appellant's Complaint is unclear on the matter, it is reasonable to infer, assuming the well-pleaded facts of the Complaint to be true, that Plaintiff-Appellant sought accommodation from UNM on two occasions: once in 2007 and once in 2009. Aplt. App. at 9, ¶ 19; Aplt. App. at 12-13, ¶ 36. The 2009 alleged request for accommodation occurred after Plaintiff-Appellant had successfully completed two years of medical school without accommodation. Therefore, it was clear at that point that Plaintiff-Appellant did not need accommodation from UNM. Accordingly, the only relevant denial of accommodation is alleged to have occurred in 2007. The ADA Amendments Act went into effect in 2009, and this Court has held that it does not apply retroactively. Rhodes v. Langston University, 2011 WL 4867552 (10th Cir. Oct. 14, 2011) (unpublished). Rhodes is joined by the overwhelming precedent of other Circuits, including opinions in the Fifth, Sixth, Seventh and Eleventh Circuits. Lawson v. Plantation Gen. Hosp., 704 F. Supp. 2d 1254, 1272 (S.D. Fla. 2010) (collecting cases). Because the relevant alleged actions occurred in 2007, the ADA Amendments Act is inapplicable.

Moreover, even taking the ADA Amendments Act into account, the District Court still properly dismissed Plaintiff-Appellant's claim under the ADA and the Rehabilitation Act. The ADA Amendments Act was passed in 2008, and it was passed with the express purpose of superseding two Supreme Court cases, Sutton

21

v. United Airlines, Inc., 527 U.S. 471(1999), and Toyota Motor Manufacturing, Kentucky, Inc. v. Williams, 534 U.S. 184 (2002).  ADA Amendments Act of 2008, P.L. 110-325, § 2.  Specifically, the ADA Amendments Act was enacted with the purpose of rejecting the requirement in Sutton that the question of whether an impairment substantially limits a major life activity must be made with reference to the ameliorating effects of mitigating measures.  It was also enacted to reject the standard in Toyota stating that the term "substantially limiting" in the ADA is to be interpreted strictly.  To these ends, the ADA Amendments act changed the ADA to include, *inter alia*, the following provisions:

"The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures…" 42 U.S.C. § 12102(4)(E)(i).  However, "ordinary eyeglasses or contact lenses", defined as "lenses that are intended to fully correct visual acuity or correct refractive error" are specifically excluded from this lack of regard.  Indeed, the amended ADA clearly states that the "ameliorative effects of the mitigating measures of ordinary eyeglasses or contact lenses *shall* be considered in determining whether an impairment substantially limits a major life activity."  42 U.S.C. § 12102(3)(e)(ii) (emphasis added).

Moreover, in order to broaden the construction of "substantially limiting" in the ADA, the amended ADA states that "the definition of disability in this Act

shall be construed in favor of broad coverage of individuals under this Act, to the maximum extent *permitted by the terms of the Act*." 42 U.S.C. § 12102(4)(A) (emphasis added). The amended ADA also contains language stating that "the term 'substantially limits' shall be interpreted consistently with the findings and purposes of the ADA Amendments Act of 2008." 42 U.S.C. § 12102 (4)(B). However, it is notable that Congress did not replace the phrase "substantially limits" with the word "limits." Therefore, it is clear that the level of impairment required for a determination of disability remains significant. Congress simply wanted to reverse the effects of two Supreme Court cases, and return ADA jurisprudence to the state that existed in the 1990s.

Under this standard, the holding of <u>McGuinness</u>, as it applies to the present case, survives the ADA Amendments Act. Plaintiff-Appellant is correct in that <u>McGuinness</u> was decided prior to the ADA Amendments Act. However, <u>McGuinness</u> was also decided prior to the Supreme Court decisions in both <u>Sutton</u> and <u>Toyota</u>, the two Supreme Court cases to which the ADA Amendments Act intended to reverse.[2] Accordingly, it is fair to say that <u>McGuinness</u> was decided

---

[2] It is true that this Court based its holding in <u>McGuinness</u>, in part, on its own precedent set in <u>Sutton v. United Airlines, Inc.</u>, 130 F.3d 893 (10th Cir. 1997), which held that the determination of whether a particular plaintiff was disabled was to be made with reference to mitigating measures. This decision was upheld by the United States Supreme Court in its Sutton decision, which was, in turn, superseded by the ADA Amendments Act. However, for the purposes of the present case, <u>Sutton</u> survives because, as will be shown below, the mitigating

under the same national standard to which Congress intended to return when it passed the ADA Amendments Act.

Even assuming, *ad arguendo*, that the ADA Amendments Act partially invalidated the McGuinness holding, it would not invalidate the district court's holding in the present case.  In McGuinness, this Court held that the plaintiff was not disabled, in part, because the plaintiff was able to mitigate his disability. However, while the ADA now generally requires that the question of whether a plaintiff is disabled is to be made without reference to mitigating factors, this requirement is inapplicable to the present case: rather, Plaintiff-Appellant's particular mitigating factor is still relevant in determining whether Plaintiff was disabled.  As noted above, the amended ADA still requires that "the ameliorative effects of the mitigating measures of ordinary eyeglasses or contact lenses shall be considered in determining whether an impairment substantially limits a major life activity."   42 U.S.C. § 12102(4)(E)(ii).   The Amended Act defines "ordinary eyeglasses or contact lenses" as "lenses that are intended to fully correct visual acuity *or eliminate refractive error.*"  (emphasis added)

In the present case, Plaintiff-Appellant has been able to mitigate his Irlen's syndrome, to the point where he could pass medical school classes, through the use of colored eyeglasses.  It is clear that these eyeglasses are considered "ordinary

---

measure used by Plaintiff-Appellant was a type of eyeglasses, which the ADA Amendments Act specifically lists as an exception to its superseding of Sutton.

eyeglasses" under the Amended ADA, because they correct his visual acuity.

When a technical term, such as visual acuity, is used in a statute, it is presumed to

have its technical meaning.  Cooper Technologies Co. v. Dudas, 85 U.S.P.Q.2d

14652007 WL 4233467 at *4, citing 2A Sutherland, *Statutory Construction* §

47.29.  The Beltina Health Dictionary defines "Visual Acuity" as follows:

> **Visual Acuity - the ability to see objects clearly and sharply.**
> Visual acuity assesses central vision and represents the function of
> the CORNEA, iris (pupil size), LENS, and RETINA. The
> SNELLEN CHART, which presents lines of letters of diminishing
> size, is the standard measure of visual acuity. Environmental
> factors that influence visual acuity include lighting and contrast.
> The most common disturbances of visual acuity are
> REFRACTIVE ERRORS such as MYOPIA (nearsightedness),
> HYPEROPIA (farsightedness), and ASTIGMATISM (blurred
> vision). PRESBYOPIA, age-related changes in the cornea's
> FLEXIBILITY, affects near-vision visual acuity.

The statutes use of the language "fully correct visual acuity *or* eliminate

refractive error," indicates that Congress intended that eyeglasses intended to

correct all deficiencies of visual acuity, not just those resulting from refractive

error.  If Congress intended to limit the term "ordinary eyeglasses" to those that

correct refractive errors such as myopia and presbyopia, it could have worded the

statute to read "fully correct visual acuity by eliminating refractive error."

Plaintiff-Appellant alleges that his Irlen's Syndrome results in "fragmented

vision or diminished coherence in their vision and perception while reading,

especially where the material is printed on white paper and under harsh lighting

conditions or fluorescent lighting." Aplt. App. at 9, ¶ 17.   He further alleges that

the syndrome is caused by "hypersensitive photoreceptors in the eyes of the afflicted person." Id., ¶ 16.Therefore, his alleged Irlen's syndrome is a reduced ability to see objects clearly and sharply, caused by a malfunction of the retina, and affected by contrast and lighting.  As a result, it constitutes reduced visual acuity, so the eyeglasses that correct the condition are included in the category of "normal eyeglasses or contact lenses" and their mitigating effects are to be taken into account when determining whether Plaintiff-Appellant truly was disabled. Because, with the colored eyeglasses, Plaintiff-Appellant was able to pass his first two years of medical school, it is clear that his alleged Irlen's Syndrome did not substantially impair his major life activities of reading and learning.  Accordingly, the District Court correctly held that Plaintiff was not disabled, and correctly dismissed Plaintiff's claim.

Moreover, even assuming, *ad arguendo*, that the question of whether Plaintiff-Appellant is disabled is to be considered without taking into account the mitigating factor of the colored eyeglasses, Plaintiff still is not substantially impaired in the major life activities of learning and reading.  McGuinness was based not only on the mitigating factors used by the plaintiff, but also on this court's conclusion that "for the purposes of the ADA, inability to pursue one career, such as medicine, does not constitute a severe impact on an individual's life."  Similarly, in Pacella, the plaintiff was not fully able to mitigate his

impairment.   While the <u>Pacella</u> plaintiff was able to improve his vision using corrective lenses, one of his eyes remained slightly impaired, and the other eye greatly impaired.   As a consequence, he had difficulties with depth perception. The <u>Pacella</u> plaintiff had some problems using instructional devices such as blackboards and projectors, could not "normally" use coded answer sheets, and was somewhat slower than his classmates at completing assignments involving relief determination.   Nonetheless, the plaintiff was able to gain admission to dental school, which presumably requires a college degree.   However, the plaintiff failed several classes and was dismissed for failure to perform at an acceptable academic level.   Yet, the Federal District Court for the District of Massachusetts held that the plaintiff was not disabled: despite some limitations in learning, the plaintiff did not show "that his eyesight substantially limits his capacity to pursue graduate degrees and careers other than dentistry." <u>Pacella</u>, 66 F. Supp. 2d at 238.

In the present case, Plaintiff-Appellant's limitations without any mitigation are similar to the <u>Pacella</u> plaintiff's limitations despite mitigation.   Without mitigation, Plaintiff-Appellant was able to graduate from college, and to excel. Plaintiff-Appellant was able to achieve an acceptable score on the MCATs and get admitted to medical school.  Indeed, Plaintiff-Appellant's Complaint does not even state facts that indicate that Plaintiff-Appellant failed his medical school classes before he began wearing the colored eyeglasses, merely that he took a medical

leave.  Accordingly, like the Pacella plaintiff, Plaintiff-Appellant has not stated facts that would indicate that his major life activity of learning is substantially impaired, even without taking Plaintiff-Appellant's mitigating factors into account. Therefore, because Plaintiff-Appellant is not disabled, even without his mitigating factors, the District Court's decision should be upheld.

Similarly, the other effect of the ADA Amendments Act, which broadened the definition of "substantially limits," does not affect the holding of McGuinness, at least as it pertains to the present case.  Congress broadened the definition of "substantially limits," in response to Toyota, a case that was decided four years after McGuinness.  The amended ADA  retained the term "substantially limits," in the definition of "disability."   Accordingly, Congress clearly did not intend to allow every limitation of a major life activity, no matter how trivial, to qualify as a disability.     Indeed, the revised regulations issued by the Equal Employment Opportunity Commission in response to the ADA Amendments Act clearly state that "not every impairment will constitute a disability within the meaning of this section."  29 C.F.R. § 1630.2(j)(ii).  As such,, the amended ADA still requires an analysis of the magnitude of the plaintiff's impairment.

This analysis favors a finding that Plaintiff-Appellant is not substantially limited in the major life activities of learning and reading.  The Amended ADA states that "the term 'substantially limits' shall be interpreted consistently with the

findings and purposes of the ADA Amendments Act of 2008."    42 U.S.C. 12102(4)(B). To the extent that the "Findings and Purposes" section of the ADA Amendments Act concerns itself with the meaning of the term "substantially," it is to explicitly reject the holding of the Supreme Court in <u>Toyota</u>.  P.L. 110-325 §2(b)(4)-(6).  The Act contains no other guidance regarding this issue.  Thus, it is fair to say that Congress, in enacting the ADA Amendments Act, intended to return ADA jurisprudence regarding the meaning of "substantially limits" to the state that existed prior to the <u>Toyota</u> decision.  In the present case, all of the holdings relied upon by the district court in its decision were issued prior to the <u>Toyota</u> decision. Accordingly, these holdings, to the extent that they define "substantially limits," are still good law, and the District Court was correct in applying them.

During the pre-<u>Toyota</u> era, many decisions held that persons, such as Plaintiff-Appellant, who could reach all but the highest levels of scholastic achievement, were not substantially limited in the major life activities of learning and reading. *See generally* <u>McGuinness</u>; <u>Pacella</u>. *See also* <u>Knapp v. Northwestern Univ.</u>, 101 F.3d 473 (7th Cir. 1996) (college student whose heart condition prevented him from playing intercollegiate basketball not substantially limited in the major life activity of learning).  Indeed, prior to the <u>Toyota</u> decision, this Court adopted a standard that compared a person's ability to carry out a major life activity with that of the average person of the general population.  <u>Pack v. Kmart</u>

29

Corp., 166 F.3d 1300, 1305-06 (10th Cir. 1999). In the present case, Plaintiff-Appellant, like the plaintiffs in McGuinness and Pacella, excelled at learning compared to most people in the general population.   Accordingly, under this standard, which is unchanged by the ADA Amendments Act, Plaintiff-Appellant is not disabled.

Given the lack of guidance regarding the definition of "substantially limits," other than the explicit rejection of the Toyota holding, it is clear that Congress simply intended to make sure that persons as impaired as the Toyota plaintiff were protected by the ADA.  However, there is no evidence that Congress intended to extend those protections to plaintiffs who were much less impaired than was the Toyota plaintiff.  Indeed, the Toyota plaintiff suffered from a very high level of impairment.  In Toyota, the Supreme Court reversed the Sixth Circuit decision in Williams v. Toyota Motor Mfg., Kentucky, 224 F.3d 840 (6th Cir. 2000).  In that series of cases, a plaintiff sued her employer under the ADA for failing to accommodate her disability.  The plaintiff suffered from extreme restrictions regarding her ability to carry out manual tasks.  For instance, she had permanent work restrictions  "that precluded her from lifting more than 20 pounds or from 'frequently lifting or carrying objects weighing up to 10 pounds,' engaging in 'constant repetitive … flexion or extension of her wrists or elbows, performing overhead work, or using vibratory or pneumatic tools."  Toyota, 534 U.S. at 187-

88.  Indeed, the Toyota plaintiff's disability was "analogous to having missing, damaged, or deformed limbs."  Williams, 224 F.3d at 843.  The Sixth Circuit held that the plaintiff was disabled, because she was "substantially limited in performing manual tasks."  The Supreme Court reversed, saying that the plaintiff was not disabled because she could tend to her personal hygiene and carry out basic household chores.

Inability to ever lift more than 20 pounds or perform any overhead work constitutes a substantial limitation in a person's ability to perform the major life activity of manual work, even if the person was able to maintain basic hygiene practices.  Such a person is properly considered to be substantially limited, as compared to the average person in the general population, in the area of manual labor.  There is no evidence that Congress intended to extend the definition of "disability" to someone as mildly impaired as Plaintiff-Appellant.  Plaintiff-Appellant's ability to learn and to read is not nearly as impaired as was the Toyota plaintiff's ability to do manual work.  Rather, Plaintiff-Appellant obtained a college degree with no modification at all, and passed his first two years of medical school with the assistance of colored eyeglasses.  Indeed, while the Toyota plaintiff was unable to complete all but the easiest forms of manual work without assistance, Plaintiff-Appellant is able to complete all but the most difficult forms of reading and learning without assistance.  Accordingly, even under the broader

definition of the term "substantially limits" provided by the ADA Amendments Act, Plaintiff is not disabled.

Indeed, this Court has already held that, even under the Amended ADA, a person needs to suffer from a significant impairment in order to be classified as disabled.  Allen v. Southcrest Hosp., 2011 WL 6394472 (10th Cir. Dec. 21, 2011) (unpublished)  In Allen, this Court held that a medical assistant who suffered from migraine headaches was not disabled, despite  the fact that her job triggered the migraines and, on days that she suffered from the migraines, had to take medication that made her drowsy, thus making it hard to care for herself during the evening. 2011 WL 6394472  at *1-*4.  The Court held that, despite these problems with migraines, she was not disabled.   In reaching this decision, this Court considered the fact that many non-disabled people suffer from disturbed sleep patterns. Id. at *4-*5.  Moreover, in order to be classified as "disabled," the plaintiff would need to demonstrate that she was significantly impaired in a broad class of jobs. Id. at *5-*7. This Court noted that the regulations that required such demonstration survived the ADA Amendments Act. Id.

Drawing an analogy to the educational context, it is clear that a plaintiff is not disabled if his substantial limitations were confined to one academic program. Indeed, the holding of Allen shows that McGuinness and Pacella survive the ADA Amendments Act to the extent that a person who has difficulty with only one

academic program is not considered to be disabled.    Accordingly, the District

Court correctly granted UNM's Motion to Dismiss.

    2.    UNM Did not Deny Plaintiff-Appellant the Benefits of its Programs, Services or Activities

    Even assuming, *ad arguendo*, that Plaintiff-Appellant is considered to be

disabled, the District Court decision should still be upheld. Plaintiff-Appellant has

not demonstrated that UNM Defendants discriminated against him due to his

condition.  The ADA and Rehabilitation Act require *reasonable* modifications, or

accommodations, to be made to a program, if these modifications are required to

allow a qualified individual with a disability to benefit from the program.

However, all of Plaintiff's requested accommodations are unnecessary or

unreasonable. It is clear that Plaintiff does not require any modification in the

medical school program itself.  Plaintiff succeeded in his medical school classes

with the help of the colored eyeglasses and medication.  Plaintiff's sole complaint

against UNM is that it did not assist him in receiving accommodations from

NBME.  However, UNM was not required to provide this assistance.  Indeed,

Plaintiff's request is not for accommodation from UNM.  Rather, it is a request for

accommodation from NBME.  As will be shown below, UNM is not responsible

for the actions of NBME.    Plaintiff only requested assistance from UNM in

obtaining accommodation from NBME, and there is no legal authority that would

consider this to be a request for accommodation from UNM.  As noted above,

33

Plaintiff-Appellant did not allege that he required a modification of his medical school program, only that he needed a modification of the USMLE. Moreover, even if Plaintiff's request for assistance is deemed to be a request for accommodation from UNM, it is a request for an unreasonable accommodation.

Indeed, a public entity need not make accommodations for a disability if such modifications would "fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7). Plaintiff's fundamental request from UNM was for its assistance in convincing Defendant NBME to accommodate his condition. In short, Plaintiff requested a modification that would fundamentally alter the nature of the University of New Mexico, from that of an institution of higher learning to that of an advocacy organization. UNM Defendants were not required to fundamentally alter their mission in this manner.

Significantly, Plaintiff-Appellant does not dispute this analysis, and merely claims that it was a question of fact, without citing any authority in support of this assertion. Opening Brief at 31-32. However, even if all of the well-pled facts in Plaintiff-Appellant's Complaint are assumed to be true, Plaintiff-Appellant has not stated sufficient facts to show that UNM denied Plaintiff-Appellant the benefits of its programs, services, and activities. Indeed, the opposite is true: the facts alleged in Plaintiff-Appellant's Complaint show that UNM did *not* deny Plaintiff-Appellant these benefits.

Plaintiff-Appellant alleges that he first requested accommodation for his Irlen's syndrome in 2007, when he returned to medical school.  Aplt. App. at 9, ¶ 19. While he alleges that UNM denied Plaintiff-Appellant this accommodation, it became apparent that Plaintiff-Appellant did not need the accommodation, as he was then able to pass his first two years of medical school. Aplt. App. at 10, ¶ 23. Plaintiff-Appellant's only difficulty after he returned to medical school was the USMLE Step one examination, for which UNM is not responsible.

As Plaintiff-Appellant notes in his Complaint, the USMLE examination is given by NBME, rather than UNM, and it was NBME, not UNM that denied Plaintiff-Appellant accommodation to take the USMLE.  Plaintiff-Appellant is attempting to hold UNM responsible for the actions of NBME.  This argument is wholly without merit.

Under the ADA, such vicarious liability only exists where one party exerts control over the other.  *See, e.g.,* E.E.O.C. v. Wal-Mart Stores, Inc., 187 F.3d 1241 (10th Cir. 1999) (vicarious liability governed by the law of agency);  Conrad v. Bd. of Johnson County Com'rs, 237 F. Supp. 2d 1204, 1235-36 (D. Kan. 2002) (holding that an employer was not liable for a third party's violation of the ADA unless the third party was acting on orders from the employer); Gunson v. James, 364 F. Supp. 2d 455, 463 (D.N.J. 2005).  Plaintiff-Appellant's Complaint is utterly devoid of any suggestion that UNM exerted such control over NBME.   While the

Complaint contains the legal conclusion that, for the purposes of this lawsuit, NBME is an agent of the other Defendants, such a bald legal conclusion is not sufficient to survive a motion to dismiss.  Bird v. Delacruz, 2005 WL 1625303 at *4 (S.D. Ohio 2005) (unpublished) (collecting cases).  Plaintiff-Appellant's legal conclusion is not supported by any facts showing that UNM exerted the requisite control over NBME.  Indeed, the Complaint admits that the organizations are wholly separate: while UNM is an arm of the state of New Mexico controlled by the Board of Regents, NBME is a national non-profit organization based in Philadelphia, Pennsylvania.  Aplt. App. at 7, ¶¶ 3-4.  Plaintiff admits that it was NBME that made the decision to deny him accommodation for his Irlen's Syndrome.  Accordingly, UNM is not responsible for this alleged lack of accommodation.  Therefore, the District Court decision was correct.

Plaintiff-Appellant also claims that UNM should have modified its rules to allow him to continue taking classes while sorting out his difficulties with NBME.  However, this argument, as well, is without merit.  By allowing Plaintiff-Appellant to continue with classes, UNM would have to have lowered its academic standards – standards that Plaintiff admits are common to most, if not all, medical programs.  It is clear, *as a matter of law*, that such lowering of academic standards is an unreasonable modification of an academic program.  McGuinness, 170 F.3d at 979; Powell v. Nat. Bd. of Medical Examiners, 364 F.3d 79 (2d Cir. 2004);

36

Powell is similar to the present case.  In Powell, the plaintiff was a former University of Connecticut medical student who brought suit under the ADA, claiming she was disabled as a consequence of attention deficit disorder and dyslexia. 364 F.3d at 82-83. The Powell plaintiff failed the USMLE Step one examination twice, and requested accommodation from NBME, which NBME denied. Id. After NBME denied her accommodation, she failed the Step One examination for a third time, after which the University of Connecticut dismissed her from the medical school.   Id.  She then brought an ADA lawsuit against the University of Connecticut and the NBME.

The Powell plaintiff's grounds for her lawsuit against the University of Connecticut were based on the University of Connecticut's decision not to promote her to the third year of medical school in spite of the fact that she had not passed the USMLE Step One.  Id. at 85-86.  Indeed, there was no argument, or even a suggestion, that the University of Connecticut was at all responsible for NBME's failure to provide accommodations for Powell.  Moreover, the Second Circuit rejected Powell's argument that allowing her to enter the third year of medical school without passing the Step One examination was a reasonable accommodation.   Indeed, "[w]hen reviewing the substance of a genuinely academic decision, courts should accord the faculty's professional judgment great deference." Id.  at 88, citing Regents of the Univ. of Mich. v. Ewing, 474 U.S. 214

(1985).  Moreover, the Second Circuit found as a matter of law that "[t]he accommodation requested by plaintiff, that she be allowed to continue in the program without first passing Step I, *would have changed the nature and substance of UConn's program.*"  <u>Id.</u> (emphasis added).  Indeed, "permitting a student who did not definitively prove her mastery of basic medical sciences to advance into the later stages of medical school, and become a treating physician who had direct contact with patients was something the medical school correctly believed  would unreasonably alter the nature of its program."  <u>Id.</u>

While not as on point as <u>Powell</u>,  <u>McGuinness</u> shows that this Court has embraced the principle that a university faculty is to be accorded great deference regarding genuinely academic decisions.   In <u>McGuinness</u>, the plaintiff had "marginal" grades in more than fifteen percent of his first year's classes which, pursuant to UNM Medical School rules, required him to repeat his first year of medical school.  170 F.3d at 977.  The <u>McGuinness</u> plaintiff chose not to repeat his first year, and instead brought suit at the New Mexico federal district court.  <u>Id.</u> The district court granted UNM summary judgment.  This court upheld summary judgment on the grounds, as described above, that the plaintiff was not disabled.  Moreover, this Court held that even if the plaintiff were disabled, UNM had not discriminated against him, because his requested accommodations were unreasonable.  <u>Id.</u> at 979.  It was not reasonable for the plaintiff to expect that his

marginal grades be ignored and that he be promoted to his second year of medical school.    Indeed, "[r]equiring the University of New Mexico to advance Mr. McGuinness to the next level of the medical school program would represent a substantial, rather than a reasonable accommodation."  McGuinness, 170 F.3d at 979.  Accordingly, this Court accepts the principle that it is unreasonable to expect an academic institution to promote a student who has not fulfilled its requirements.

The present case is very similar to Powell and McGuinness.  In all three cases, the plaintiff requested, as an accommodation for his supposed disability, that a university disregard its academic requirements at its medical school.  Plaintiff admitted in his Complaint that the USMLE step one examination is a prerequisite for advancement into the third year of medical school, at UNM and at other medical schools.  Aplt. App. at 10, ¶ 24-25.  It is clear, in this Court and in other circuits, that such an accommodation is not reasonable.  Like the plaintiffs in Powell and McGuinness, Plaintiff-Appellant cannot reasonably expect such an accommodation.  Accordingly, assuming all of the facts in Plaintiff-Appellant's complaint to be true, Plaintiff-Appellant's requested accommodation is unreasonable.  Thus, the District Court's decision should be upheld.

3.    UNM's Alleged Actions were not the Proximate Cause of Plainiff-Appellant's Alleged Damages

Finally, Plaintiff's failure to pass the USMLE, even if it resulted from his Irlen's Syndrome, was not proximately caused by UNM Defendants' alleged failure

to provide accommodation for the condition.  In order to state a claim under the ADA, a plaintiff is required to state facts that, if true, show that the alleged harm was the natural or foreseeable result of the alleged discriminatory action.  BD v. Debuono, 193 F.R.D. 117, 140 (S.D.N.Y. 2000); *See also* Young v. Dillon Cos., 468 F.3d 1243, 1253 (10th Cir. 2006) (In a Title VII case, court held that the plaintiff was required to show that the alleged discriminatory acts were the proximate cause of the adverse action); Trask v. Franco, 446 F.3d 1036, 1046 (10th Cir. 2006) (liability for civil rights violations is only for harm that proximately resulted from the violation).

In BD, the plaintiff, the mother of an autistic child, claimed that, because of the delay in receiving certain accommodations from government programs, the mother was forced to quit her job.  However, the district court held that the plaintiff could not maintain a claim on this basis, because it alleged "damages that are both unforeseeable and speculative.  The extension of a period during which the parent of an autistic child is unemployed neither flows directly nor results naturally and probably from the failure to provide early intervention services to that child."  193 F.R.D. at 140.

The present case is analogous to BD.  In the present case, Plaintiff has alleged that Defendant NBME failed to provide accommodations for Plaintiff to take the USMLE exam.  Plaintiff speculates that, if UNM Defendants had provided

accommodations for his condition, NMBE would have followed suit, despite the fact that Plaintiff clearly did not need accommodations from UNM Defendants. However, Plaintiff states that the reason NBME did not accept Plaintiff's appeal was Plaintiff's inability to assemble the requisite paperwork in time.  Aplt. App. at 12, ¶¶ 32-33.   Thus, UNM Defendants' alleged failure to accommodate was irrelevant to NBME's decision.  Plaintiff's allegation that UNM Defendants could have done anything to alter NBME's decision is pure speculation.  In any event, Plaintiff's Complaint states no facts that would indicate that NMBE's refusal to allow the appeal flowed naturally from any action or inaction on the part of UNM Defendants.

Plaintiff-Appellant does not dispute any of this analysis, merely claiming that causation is a question of fact.  However, Plaintiff admits that whether a complaint adequately alleges causation is a question of law. Opening Brief at 31. Plaintiff-Appellant's complaint does not sufficiently allege causation.  While the Complaint alleges that Plaintiff-Appellant sought assistance from UNM in obtaining accommodation from NBME, Plaintiff, the Complaint alleges no facts that, directly or inferentially, indicate that such assistance would have made any difference in NBME's eventual decision. Plaintiff-Appellant argues in his Opening Brief that his allegation in ¶ 39 of the Complaint was sufficient to state a claim. However, this is not correct:  Plaintiff does allege that "the determination that

41

Plaintiff had a disability would have materially assisted him in receiving accommodation." Nevertheless, this allegation is not a well-pled fact and, therefore, is not assumed to be true for the purposes of a Motion to Dismiss. To be a well-pled fact, an allegation must be plausible, non-conclusory, and non-speculative. Dudnikov v. Chalk & Vermillion Fine Arts, Inc., 514 F.3d 1063 (10th Cir. 2008) citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 553-558 (2007). Plaintiff's allegation merely states that a determination of disability would have assisted him, without any factual support for this conjecture. Accordingly, it is conclusory and speculative.

Moreover, Plaintiff's complaint contains a well-pled fact that he received a letter from NBME requesting certain documentation regarding his alleged condition. Plaintiff-Appellant further alleges that he received a letter from NBME denying him accommodation because he had not sent in required documentation, and also alleges that because he was unable to produce this documentation. Assuming this to be true, Plaintiff-Appellant's claim that his application was denied because of UNM's alleged actions is simply not plausible. Accordingly, Plaintiff-Appellant has not alleged facts supporting the causation requirement that is vital to his claims under the ADA and the Rehabilitation Act. Therefore, the district court's dismissal of these claims must be upheld.

### c.     THE DISTRICT OF NEW MEXICO WAS CORRECT IN DECLINING TO EXERCISE JURISDICTION OVER PLAINTIFF-APPELLANT'S BREACH OF CONTRACT CLAIM

In its Opinion, the District Court declined to exercise jurisdiction over Plaintiff-Appellant's breach of contract claim, on the grounds that the claim was based on state law.  Having dismissed all of Plaintiff's federal claims, the district court dismissed Plaintiff-Appellant's supplemental state law claim without prejudice.  Such actions are reviewed for abuse of discretion.  Nielander v. Board of County Com's of County of Republic, Kan., 582 F.3d 1155, 1172 (10th Cir. 2009). In the present case, the dismissal of Plaintiff-Appellant's breach of contract cause of action was a valid exercise of the District Court's discretion.

First, jurisdiction over Plaintiff-Appellant's breach of contract claim is barred by the Eleventh Amendment.  Ordinarily, a federal court can exercise pendent, or supplemental, jurisdiction over state law claims. 28 U.S.C. § 1367. When state law claims are asserted pursuant to the supplemental jurisdiction of federal courts, these claims are barred by the Eleventh Amendment.  As the Supreme Court stated in Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 120-21 (1984) (citations omitted):

> This constitutional bar applies to pendent claims as well. As noted above, pendent jurisdiction is a judge-made doctrine of expediency and efficiency derived from the general Art. III language conferring power to hear all "cases" arising under federal law or between diverse parties. (terming pendent jurisdiction "a doctrine of

43

discretion"). The Eleventh Amendment should not be
construed to apply with less force to this implied form of
jurisdiction than it does to the explicitly granted power to
hear federal claims.

Accordingly, in the absence of state consent to suit in federal court, just as

Plaintiff's claim under 42 U.S.C. § 1983 is barred by the Eleventh Amendment, this

Amendment bars this Court's pendent, or supplemental, jurisdiction over Plaintiff's

state law breach of contract claim.  Therefore, this claim should be dismissed.

Plaintiff-Appellant argued in his Opening Brief that the state of New

Mexico has waived sovereign immunity for claims regarding the breach of a

written contract.  Opening Brief at 28-29. However, such a waiver is limited to

state courts.  The mere fact that a state has waived sovereign immunity in state

court does not result in a waiver of Eleventh Amendment immunity from suit in

federal court.  *See* Ward v. Presbyterian Health Servs., 72 F. Supp. 2d 1285, 1291-

94 (D.N.M. 1999).  Indeed, "[w]aiver of Eleventh Amendment immunity occurs

*only* where stated by the most express language or by such overwhelming

implication from the text of a state statute or constitution as will leave no room for

any reasonable construction."  Jicarilla Apache Tribe v. Kelly, 129 F.3d 535, 538

(10th Cir. 1997).  In New Mexico,  the section that waives sovereign immunity for

valid written contracts does not state that it also waives Eleventh Amendment

Immunity for such contracts.  N.M.S.A. 1978, § 37-1-23.  Indeed, this waiver is

part of a section that provides a general grant of sovereign immunity for written contracts in state court:  it states that valid written contracts were an exception to this general immunity. Id. Therefore, there is no waiver, explicit or implicit, of Eleventh Amendment immunity by the State of New Mexico for written contracts. Accordingly, the District Court's decision should be upheld.

Moreover, even assuming, *ad arguendo*, that the District Court had jurisdiction over Plaintiff-Appellant's cause of action for breach of contract, the District Court correctly chose not to exercise its jurisdiction over this cause of action.  The District Court had disposed of all of Plaintiff-Appellant's federal claims, leaving only his state law claims.  Under such circumstances, "the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." Brooks v. Gaenzle, 614 F.3d 1213, 1229 (10th Cir. 2010).  Indeed, such restraint is essential, "because notions of comity and federalism demand that the state court try its own lawsuits, absent compelling reasons to the contrary." Id. at 1230.

The procedural background of Brooks is very similar to the one in the present case.  In Brooks, the plaintiff filed a claim that included several causes of action under 42 U.S.C. §§ 1983 and 1985. 614 F.3d at 1216.  He also included a state law claim for assault and battery based on the same alleged actions, for which the federal court had supplemental jurisdiction.  Id.  This Court upheld summary

judgment on all of the federal causes of action, and also held that dismissal without prejudice was appropriate for the cause of action for assault and battery, as the latter were state law causes of action.  Id. at 1228-30. With the federal claims dismissed, the state law claim was best left for state court jurisdiction.  Id.  In the present case, the U.S. District Court for the District of New Mexico dismissed all of Plaintiff-Appellant's federal causes of action.  As noted above, this dismissal was appropriate.  Therefore, the District Court correctly stated that "[a]ny breach of contract claim he may have against the Defendants could only arise, if at all, from state law.  Thus there is not a compelling reason to maintain jurisdiction over this suit, and the state law claims would be better addressed in state court."  Aplt. App. at 238.  Accordingly, the dismissal without prejudice of the breach of contract cause of action must be upheld.

## VII.  CONCLUSION

The District Court for the District of New Mexico was correct in granting UNM's Motion to Dismiss Plaintiff-Appellant's cause of action under 42 U.S.C. § 1983 on the grounds that it lacked jurisdiction due to the Eleventh Amendment. Moreover, the District Court was correct in granting UNM's Motion to Dismiss Plaintiff-Appellant's ADA and Rehabilitation Act causes of action, because Plaintiff-Appellant failed to state a claim upon which relief can be granted pursuant to those statutes.  Assuming the well-pled facts of Plaintiff-Appellant's

Complaint to be true, Plaintiff-Appellant is not considered to be disabled pursuant to those statutes.  Moreover, UNM was not responsible for NBME's decision to deny Plaintiff-Appellant accommodations, and none of UNM's alleged actions proximately caused Plaintiff-Appellant's alleged damages.  Finally, the District Court was acting within its discretion when it dismissed Plaintiff-Appellant's breach of contract claim without prejudice.    Accordingly, Appellee Board of Regents of the University of New Mexico respectfully requests that this Honorable Court affirm the decision of the New Mexico District Court granting its Motion to Dismiss Plaintiff-Appellant Chad Cunningham's Complaint in its entirety.

Respectfully submitted,

PARK & ANDERSON, L.L.C.

By **/s/ Lawrence M. Marcus**
    Alfred A. Park
    Lawrence M. Marcus
    *Counsel for Defendant-Appellee Board*
    *of Regents of the University of New*
    *Mexico*
    707 Broadway Blvd. Ste. 202
    Albuquerque, New Mexico  87102
    (505) 246-2805

## <u>STATEMENT OF WHY ORAL ARGUMENT IS NECESSARY</u>

Appellee Board of Regents of the University of New Mexico believes that oral argument would be useful to clarify a number of issues about which there is currently some confusion, and aid the Court in rendering its decision. The present case raises several issues regarding nuances of the Americans with Disabilities Act. These issues involve the definition of disability and the responsibility of an educational institution in providing accommodations. Oral argument will be useful in clarifying these issues.

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS</u>

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 11,049 words, excluding the parts of the brief exempted by Fed. R. App. P. 32 (a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(16) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2003 in 14 point Times New Roman.

<u>/s/ Lawrence M. Marcus</u>

Attorney for Defendants-Appellants Board of Regents of the

University of New Mexico

On this 29th day of February 2012

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify, regarding Appellant's Opening Brief, that the following is true:

1.     All required privacy redactions were made (no such redactions were required);

2.     The ECF submission was an exact copy of the required hard copies of the brief; and

3.     The brief was scanned using AVG Anti-Virus Version 10.0.1416 and found to be virus free.  The anti-virus program is updated daily.  As of the date of the submission of the brief, the program had been last updated on February 29, 2012.

**/s/ Lawrence M. Marcus**
Lawrence M. Marcus

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of February 2012, a true and correct copy of Defendant-Appellee Board of Regents of the University of New Mexico's Answer Brief was mailed to:

    Santiago E. Juarez
    *Attorney for Plaintiff-Appellant*
    1822 Lomas Blvd., NW
    Albuquerque, NM 87104

    Shane M. Ham
    Ronda R. Fisk
    *Osborn Maledon, P.A.*
    2929 North Central Avenue, Suite 2100
    Phoenix, Arizona  85012

            **/s/Lawrence M. Marcus**
            Lawrence M. Marcus